DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Ohio State Home Services, Inc. ("OSHS"), appeals from the order of the Lorain County Court of Common Pleas, denying its motion to stay the proceedings and to compel arbitration. This Court affirms.
 I {¶ 2} On March 20, 2004, Plaintiff-Appellees, Damon and Holly Brunke (collectively "the Brunkes"), entered into a contract with OSHS to have the basement of their home waterproofed for $12,350. The Brunkes were unable to obtain the necessary financing. On July 10, 2004, the Brunkes entered into a revised agreement with OSHS providing for a reduced level of waterproofing work at a lower price of $8,000. This time, the Brunkes were able to secure partial financing. Their dissatisfaction with OSHS, however, led to the deterioration of the parties' contractual relationship and the initiation of this suit. *Page 2 
 {¶ 3} On June 15, 2005, the Brunkes filed an action against OSHS and several other parties who are not a part of this appeal. The Brunkes's complaint included, but was not limited to, claims for fraud, breach of contract, breach of warranty, failure to perform in a workmanlike manner, and violations of the Ohio Consumer Sales Practices Act and the Home Solicitation Sales Act.
 {¶ 4} On July 14, 2005, OSHS filed a motion to stay proceedings and compel arbitration. OSHS's motion was based upon an arbitration provision included in the terms of the parties' contract. The Brunkes opposed OSHS's motion, claiming that the arbitration provision was both procedurally and substantively unconscionable. Without holding a hearing, the trial court granted OSHS's motion and ordered arbitration of the claims arising from the agreement that the Brunkes and OSHS entered into on July 10, 2004.
 {¶ 5} The Brunkes and OSHS both appealed the court's May 18, 2006 decision to this Court. On June 25, 2007, we reversed the trial court's decision and remanded the cause to the court to hold a hearing on the validity of the arbitration provision. See Brunke v. Ohio State HomeServices, Inc., 9th Dist. No. 06CA008947, 2007-Ohio-3119. The trial court commenced a hearing on November 20, 2007. On December 21, 2007, the court heard closing arguments and ultimately denied OSHS's motion to stay the proceedings and to compel arbitration, finding the arbitration provision unconscionable.
 {¶ 6} OSHS timely appeals the trial court's decision, raising one assignment of error for our review. *Page 3 
 II Assignment of Error "WHETHER THE TRIAL COURT ERRED BY FINDING THE ARBITRATION PROVISION BOTH PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE?"
 {¶ 7} In its sole assignment of error, OSHS argues that the trial court erred in determining that the arbitration provision in its contract was both procedurally and substantively unconscionable. We disagree.
 {¶ 8} The unconscionability of a contract is purely a question of law.Featherstone v. Merrill Lynch, Pierce, Fenner Smith, Inc., 9th Dist. No. 04CA0037, 2004-Ohio-5953, at ¶ 12; Eagle v. Fred Martin MotorCo., 9th Dist. No. 21522, 2004-Ohio-829, at ¶ 12-13. The Ohio Supreme Court recently held that "the proper standard of review of a determination whether an arbitration agreement is enforceable in light of a claim of unconscionability is de novo, but any factual findings of the trial court must be accorded appropriate deference." Taylor Bldg.Corp. of Am. v. Benfield, 117 Ohio St.3d 352, 2008-Ohio-938, at ¶ 2. "A determination of unconscionability is a fact-sensitive question that requires a case-by-case review of the surrounding circumstances."Featherstone at ¶ 12, citing Eagle at ¶ 13.
 {¶ 9} Arbitration provisions are deemed valid and enforceable under the statute "except upon grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.01(A). One such ground is unconscionability. Porpora v. Gatliff Building. Co., 9th Dist. No. 04CA0051-M, 2005-Ohio-2410, at ¶ 6; Eagle at ¶ 29. "An unconscionable contract clause is one in which there is an absence of meaningful choice for the contracting parties, coupled with draconian contract terms unreasonably favorable to the other party." Eagle at ¶ 30, citingCollins v. Click Camera Video, Inc. (1993), 86 Ohio App.3d 826, 834. "A party seeking to invalidate *Page 4 
an arbitration clause on grounds of unconscionability must establish that the provision is both procedurally and substantively unconscionable." Ball v. Ohio State Home Servs., 9th Dist. No. 23063,2006-Ohio-4464, at ¶ 6, citing Porpora at ¶ 6.
 {¶ 10} "Procedural unconscionability concerns the formation of the agreement and occurs when no voluntary meeting of the minds is possible." Porpora at ¶ 7, citing Bushman v. MFC Drilling, Inc. (July 19, 1995), 9th Dist. No. 2403-M. "This Court has held that when determining procedural unconscionability, a reviewing court must consider factors bearing directly to the relative bargaining position of the parties." Ball at ¶ 7. Those factors include "age, education, intelligence, business acumen, experience in similar transactions, whether terms were explained to the weaker party, and who drafted the contract." Feather stone at ¶ 13, quoting Eagle at ¶ 31. "Substantive unconscionability encompasses those factors that concern the contract terms themselves[.]" Eagle at ¶ 31. "Contractual terms are substantively unconscionable if they are unfair and commercially unreasonable."Ball at ¶ 7, citing Porpora at ¶ 8.
 {¶ 11} OSHS argues that the Brunkes failed to demonstrate that its arbitration clause was procedurally unconscionable because its employee explained the arbitration provision to the Brunkes, the Brunkes had every opportunity to read and review the contract with or without seeking counsel, and the Brunkes were sufficiently experienced in terms of their age and involvement with other financial arrangements to understand the terms of their contract with OSHS.
 {¶ 12} The record reflects that neither of the Brunkes ever attended high school and that both of them struggled with their reading skills. The trial court specified that Mrs. Brunke, in particular, had "very limited reading ability." Indeed, the record reflects that Mrs. Brunke had to *Page 5 
have an oral driver's license exam given to her in lieu of a written one because of her poor reading skills. The court also noted "the ease with which [the Brunkes] were confused by the opposing counsel's and their own counsel's questions" during the proceedings, thus demonstrating the poor quality of their comprehension skills. Although the Brunkes had entered into other contracts before their contract with OSHS, they could not recall whether any of the other contracts contained arbitration clauses. The trial court found that, at least to the Brunkes's knowledge, OSHS's arbitration provision constituted their first exposure to such a provision. Neither of the Brunkes recalled ever having seen OSHS's arbitration provision prior to OSHS requesting a stay for arbitration. According to Mr. Brunke, OSHS's salesman spent about five minutes explaining the entire contract to the Brunkes. Mr. Brunke further stated that he was unaware that OSHS's contract even had a back side to it.
 {¶ 13} The Brunkes had no part in either the drafting or revising of their contract with OSHS. OSHS placed its arbitration provision on the back side of its contract. The contract, however, did not contain any place for the Brunkes to initial or otherwise indicate that they were agreeing to the terms and conditions on both the front and reverse side of the contract. While the front side of the contract contained a space for parties to initial that they had "read the reverse side of [the] agreement," there was no space or provision for parties to indicate that they had accepted the terms and conditions that they had read on the contract's reverse side. Thus, it is not entirely clear from OSHS's contract whether the Brunkes even understood that the arbitration provision on the contract's back side was a mandatory contractual term. See Porpora at ¶ 7 (noting that procedural unconscionability arises when no voluntary meeting of the minds can occur due to problems in the formation of the contract). The Brunkes indicated that they had no knowledge that they even had the ability to object to OSHS's contractual provisions if they took *Page 6 
issue with them. OSHS's salesman indicated that even he did not know if a customer had the ability to reject certain provisions in OSHS's contract because no customer had ever asked to do so. Consequently, OSHS's contractual terms and its salesman did little to aid the Brunkes in their understanding of all of the provisions in OSHS's contract.
 {¶ 14} The trial court determined that OSHS failed to explain the specific terms of its contract to the Brunkes in detail. While OSHS's representative, Kenneth Simpson, claimed that he explained OSHS's arbitration provision to the Brunkes, his explanation was of little help. During his deposition, Simpson stated that he generally explained OSHS's arbitration clause as follows:
 "[I]f at any time you [are] unsatisfied with something * * * [and] we could not come to an agreement, there would be a — basically we would tell our side, [you] would tell [your] side. Some sort of mediator or arbitrator would come in and decide what's supposed to happen or what's going to be done to resolve the issue."
Apart from the fact that Simpson interchanged the terms "mediator" and "arbitrator" in his explanation, there is no indication that he went on to tell the Brunkes exactly what arbitration entails. A person with little to no knowledge of the legal profession might take Simpson's "explanation" to mean that an arbitrator simply performs the same function as a judge. The trial court specifically noted that OSHS failed to inform the Brunkes that "an arbitrator doesn't merely say this is what you did wrong, but an arbitrator can award damages * * * over and above the contract price [and] can award punitive damages or attorney's fees[.]"
 {¶ 15} "[I]n the context of sales agreements between consumers and retailers, the Supreme Court of Ohio has recognized that such arbitration clauses are subject to considerable skepticism upon review, due to the disparity in the bargaining positions of the parties."Eagle at ¶ 58, citing Williams v. Aetna Fin. Co. (1998),83 Ohio St.3d 464, 472-73. OSHS, the stronger *Page 7 
party in this transaction, had reason to know that the Brunkes were "unable reasonably to protect [their] interests by reason of * * * ignorance, illiteracy, or inability to understand the language of the agreement, or similar factors." Taylor at ¶ 44, quoting Restatement of the Law 2d, Contracts (1981), Section 208, Comment d. As the trial court noted, the Brunkes both struggled with their literacy and comprehension skills. Moreover, OSHS did little to aid the Brunkes's understanding of its arbitration provision. Based on all of the factors set forth inFeatherstone and the "appropriate deference" we must afford to the trial court's factual findings, we agree with the trial court's conclusion that OSHS's arbitration clause was procedurally unconscionable. SeeTaylor at ¶ 2. Thus, we next turn to the issue of substantive unconscionability.
 {¶ 16} The parties based their agreement upon OSHS's form contract. The back side of OSHS's contract contained fourteen clauses, the tenth of which provided as follows:
 "Any controversy or claim whether in contract or in tort arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration before the American Arbitration Association ["A.A.A."], in accordance with the construction industry rules of the A.A.A. and judgement [sic] upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof."
Using the A.A.A.'s construction industry arbitration provisions, the trial court based its substantive unconscionability finding on the costliness of arbitration and OSHS's failure to inform the Brunkes of these costs. By itself, the arbitrator's initial fee of $950 would represent one-eighth of the parties' $8,000 contract. The Brunkes also would be responsible for fifty percent of the total arbitration fees expended arbitrating any claim(s). As such, the trial court determined that it could cost the Brunkes as much as half of the total price of their contract with OSHS to arbitrate any dispute with the company. This Court has held that prohibitive arbitration costs and fees alone may render an arbitration provision substantively unconscionable based on a case-by-case determination. Eagle at ¶ 51. Here, OSHS's arbitration provision utterly failed to *Page 8 
set forth any of the foregoing costs. See Popora at ¶ 16 (finding substantive unconscionability partially on the basis that the arbitration clause did not disclose the cost of arbitration conducted through the A.A.A. and the fact that those costs were substantially higher than the cost of court proceedings). Additionally, these shortcomings in the provision were compounded by the fact that OSHS's salesman failed to give the Brunkes any meaningful explanation of the provision when the Brunkes signed the contract. Based on our prior precedent, the trial court properly considered the Brunkes's evidence of the costs associated with arbitration in determining that OSHS's provision was substantively unconscionable.
 {¶ 17} OSHS argues, however, that the trial court erred in determining that its arbitration provision was unenforceable on the grounds of substantive unconscionability because the trial court partially based its decision on unauthenticated documents. In support of their argument at the trial level, the Brunkes provided the court with a copy of the A.A.A.'s Consumer Due Process Protocol, which they downloaded directly from the A.A.A. website. The copy of the documents that the Brunkes provided to the trial court indicated a 2007 copyright by the A.A.A. OSHS does not dispute the accuracy of the documents. OSHS merely argues that this evidence was unreliable because it was never authenticated through testimony, affidavit, or other certification. Yet, OSHS's arbitration provision specifically provided that the A.A.A.'s "construction industry rules" would govern any arbitration between OSHS and the Brunkes. Moreover, OSHS never provided the Brunkes with a copy of the construction rules or designated the source from which the Brunkes should obtain the rules for themselves. OSHS cannot now complain that the trial court relied upon the very rules that OSHS selected to govern its own contract and incorporated into its own arbitration clause. Accordingly, we conclude that OSHS's argument lacks merit. *Page 9 
 {¶ 18} Because we have determined that the Brunkes demonstrated both procedural and substantive unconscionability, we must conclude that the trial court did not err in denying OSHS's motion to stay the proceedings and to compel arbitration. OSHS's sole assignment of error lacks merit.
 III {¶ 19} OSHS's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
 Costs taxed to Appellant. *Page 10 
CARR, P. J. MOORE, J. concur