OPINION
{¶ 1} This is an appeal from an order of the court of common pleas entered pursuant to R.C. 2711.02, staying trial *Page 2 
of a civil action until arbitration has been had.
 {¶ 2} On August 24, 2006, Plaintiff, Tim Hawkins, signed a written contract with Defendant, Kentucky Check Exchange ("Kentucky Check"), a "payday lender." The contract was the sixth of its kind between the parties. Under the contract, Hawkins provided Kentucky Check with a post-dated check on his personal account in the amount of $543.75, and received in return cash in the amount of $475.00. Kentucky Check promised to hold Hawkins' check until its due date, two weeks later. Hawkins promised that the account on which the check was drawn would have sufficient funds to cover his check on the due date.
 {¶ 3} Kentucky Check deposited Hawkins' check on or after its due date, but the check was subsequently returned by the bank on which it was drawn because Hawkins' account had been closed. Kentucky Check retained Defendant, Kevin J. O'Brien, an attorney, to collect the amount Hawkins owes Kentucky Check.
 {¶ 4} In a letter dated May 1, 2007, Attorney O'Brien demanded payment of the amount due and threatened to commence an action against Hawkins if payment was not made to Kentucky Check or an agreement to pay not reached. The letter states that the amount due if a judgment is obtained will total *Page 3 
$2,106.50, representing treble damages and costs of collection. The letter further states: "Passing a bad check is a `theft offense' as that term is defined by Section 2913.01 and employed in Sections 2307.60 and2307.61, Ohio Revised Code. Kentucky Check Exchange, Inc. is alleging that you committed a theft offense by passing the above-referenced bad check."
 {¶ 5} Hawkins commenced an action against Kentucky Check, O'Brien and O'Brien's law firm. In Counts One through Seven of the complaint he filed against Kentucky Check and O'Brien, Hawkins alleged violations of the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, arising from statements and representations in O'Brien's letter, for which that Act authorizes money damages. Counts Nine and Ten rely on those same statements and representations and invoke rights conferred by the Ohio Consumer Sales Practices Act ("CSPA") to proceed as a private attorney general and for injunctive relief. Counts Ten and Eleven allege, respectively, intentional infliction of emotional distress and a civil conspiracy. Count Twelve invokes the right conferred on consumers to prosecute a class action for alleged CSPA violations. In his prayer for relief, Hawkins seeks actual and statutory compensatory damages, punitive damages, *Page 4 
injunctive relief, and any other relief to which he and the putative class he seeks to represent may be entitled.
 {¶ 6} The Defendants filed a notice of removal of Hawkins' action to Federal District Court. After the federal court declined the removal request, the Defendants filed a joint motion pursuant to R.C. 2711.02 to stay the trial of the action. The motion attached a copy of the written agreement between Hawkins and Kentucky Check, which contains an arbitration clause. The clause permits small claims actions, but requires the parties to submit to arbitration any and all claims in any action in another forum arising from or relating to the parties' agreement, including claims pursuant to federal or state law and/or in which Hawkins could proceed as a "private attorney general" or representative of a class, and waives his right to have a court determine those claims instead. Acknowledgments of Hawkins' waivers of his right to a jury trial and right to proceed as a private attorney general or through a class action clearly and conspicuously appear following the arbitration claim.
 {¶ 7} After thoroughly analyzing the Defendants' motion, Plaintiff Hawkins' memorandum contra, and the relevant law, the trial court granted the Defendants' motion and ordered the trial of Hawkins' action stayed pursuant to R.C. 2711.02 until *Page 5 
arbitration of the issues in that action is had. (Dkt. 31). Hawkins filed a timely notice of appeal.
ASSIGNMENT OF ERROR
 {¶ 8} "THE TRIAL COURT ERRED BY HOLDING THAT THE ARBITRATION AGREEMENT CONTAINED IN THE CONTRACT BETWEEN THE PARTIES IS VALID AND ENFORCEABLE."
 {¶ 9} R.C. 2711.01 states:
 {¶ 10} "A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."
 {¶ 11} Section 2711.01(B) identifies particular controversies which the present case does not involve.
 {¶ 12} A similar arbitration provision was enacted at the federal level. 9 U.S.C. § 2 provides: *Page 6 
 {¶ 13} "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
 {¶ 14} Both the Ohio and federal provisions speak generally in terms of arbitration of a controversy that subsequently arises out of a contract containing an arbitration clause. A controversy "arises out of a contract" if it involves a dispute concerning the rights and duties the contract creates. However, and in addition, R.C. 2711.01(A) authorizes agreements to submit to arbitration "any controversy .arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create." (Emphasis supplied). The controversy which Hawkins' claims for relief involve arises from O'Brien's letter from the debtor-creditor "relationship" that the contract containing the arbitration agreement created. Therefore, the controversies in the action Hawkins filed against Kentucky *Page 7 
Check and O'Brien are within the coverage of R.C. 2711.01(A).
 {¶ 15} 9 U.S.C. § 2 contains no "relationship" provision. However, cases construing that section have held that when the arbitration agreement expressly refers to controversies "arising out of or relating to" the contract containing the arbitration agreement, as the arbitration agreement in the present case does, the arbitration agreement applies to all claims "touching on" matters covered by the contract. Genesco, Inc. v. T. Kakiuchi Co. (C.A. 2, 1987),815 F.2d 840; Rhone-Poulenc Specialities Chimiques v. SCM Corp. (C.A. Fed., 1985), 769 F.2d 1569. That would include Hawkins' claims concerning O'Brien's collection letter, which touch on the contract of indebtedness between Hawkins and Kentucky Check.
 {¶ 16} The purpose of those state and federal statutory enactments was to overcome judicial resistance to arbitration. Buckeye Check Cashing,Inc. v. Cardenga (2006), 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038. As a result, Ohio courts now recognize a "presumption favoring arbitration" that arises "when the claim in dispute falls within the scope of the arbitration provision." Williams v. Aetna Fin.Co. (1998),83 Ohio St.3d 464, 471. Federal courts have held that "there is a general presumption of arbitrability, and any doubts are to *Page 8 
be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Masco Corp. v. ZurichAmerican Ins. Co. (C.A. 6, 2004), 382 F.3d 624, 627.
 {¶ 17} Relying on these principles, we agree with the trial court that the claims for relief that Hawkins' action presents concerning the representations in O'Brien's collection letter are subject to the arbitration clause in the contract between Hawkins and Kentucky Check, and Hawkins does not dispute that they are. Instead, Hawkins invokes the exception to enforcement of arbitration clauses that appears both in R.C. 2711.01(A) and 9 U.S.C. § 2, which provide that arbitration agreements are enforceable, except for or upon such grounds as exist in law or equity for the revocation of any contract.
 {¶ 18} Arbitration agreements are contracts within contracts. ABMFarms, Inc. v. Woods (1998), 81 Ohio St.3d 498. Hawkins argues that the arbitration agreement in his contract with Kentucky Check is unconscionable, and unconscionability is a ground for revocation of a contract. Taylor Building Corporation of America v. Benfield,117 Ohio St.3d 352, 2008-Ohio-938, ¶ 33.
 {¶ 19} "Unconscionability includes both `an absence of *Page 9 
meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'Lake Ridge Academy v. Carney (1993), 66 Ohio St.3d 376, 383,613 N.E.2d 183, quoting Williams v. Walker-Thomas Furniture Co. (C.A.D.C. 1965),350 F.2d 445, 449; see also Collins v. Click Camera Video, Inc.
(1993), 86 Ohio App.3d 826, 834, 621 N.E.2d 1294. The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable. See,Ball v. Ohio State Home Servs., Inc., 168 Ohio App.3d 622,2006-Ohio-4464, 861 N.E.2d 553, ¶ 6; see also, Click Camera,86 Ohio App.3d at 834, 621 N.E.2d 1294, citing White Summers, Uniform Commercial Code (1988) 219, Section 4-7 (`One must allege and prove a "quantum" of both prongs in order to establish that a particular contract is unconscionable')." Taylor Bldg. Corp., 2008-Ohio-938, at ¶ 34.
 {¶ 20} Whether a written contract is unconscionable is an issue of law. Id., ¶ 35, citing Ins. Co. of N. Am. v. Automatic-Sprinkler Corp.of Am. (1981), 67 Ohio St.3d 91. Therefore, the standard of appellate review of the trial court's determination of a claim of unconscionability is the de novo standard. Taylor Bldg. Corp., ¶ 37. Under that standard, our review of questions of law is without deference *Page 10 
to the trial court's rulings. "When a trial court makes factual findings, however, supporting its determination that a contract is or is not unconscionable, such as any findings surrounding the making of the contract, those factual findings should be reviewed with great deference." Id., ¶ 38.
 {¶ 21} "Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties,e.g., `age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question.'" Click Camera Video, Inc.,86 Ohio App. 3d at 834, quoting Johnson v. Mobil Oil Corp. (E.D. Mich. 1976),415 F.Supp. 264, 268.
 {¶ 22} Hawkins argues that the arbitration clause is procedurally unconscionable because, unlike other provisions of the contract specifying his obligation to repay the loan, the arbitration agreement appears on the back page of the loan document and was never shown to him. Hawkins also contends that the arbitration agreement is procedurally unconscionable because of the unequal bargaining position of the parties and because it is a contract of adhesion; that is, a standardized *Page 11 
form prepared by Kentucky Check and presented to Hawkins on a "Take it or leave it" basis.
 {¶ 23} Hawkins' complaint that the arbitration clause was not pointed out or explained to him is predicated on a view that Kentucky Check had a duty to do that, perhaps triggered by the fact that other parts of the contract were pointed out by Kentucky Check's representative. However, "[t]he law does not require that each aspect of a contract be explained orally to a party prior to signing." ABM Farms, Inc.,81 Ohio St.3d at 503. That Kentucky Check had no such independent duty to point out or explain the arbitration clause gains support from the following acknowledgment in the pre-printed contract that appears two lines above Hawkins' signature: "Your signature below acknowledges that you have read and understand the terms and conditions outlined on both sides of this agreement." Hawkins argues that he failed to gain that understanding, but he does not contend that he was prevented from reading the contract. "If a person can read and is not prevented from reading what he signs, he alone is responsible for reading what he signs." Haller v. Borror Corp. (1990), 50 Ohio St.3d 10, 14 (internal citation omitted).
 {¶ 24} Hawkins and Kentucky Check no doubt were in unequal bargaining positions, as Hawkins argues. Further, Hawkins' *Page 12 
need to obtain funds prior to his payday may have been urgent. However, an unequal bargaining position is not, in and of itself, a sufficient reason in law or equity to hold that arbitration agreement unenforceable. See: Gilman v. Interstate/Johnson Lane Corp. (1991),500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26. There must be some evidence that, in consequence of the imbalance, the party in the weaker position was defrauded or coerced into agreement to the arbitration clause.Id. Hawkins does not contend that he was.
 {¶ 25} A contract of adhesion is one in a standardized form that is prepared by one party and offered to the weaker party, usually a consumer, who has no realistic choice as to the contract terms.Taylor Bldg. Corp., ¶ 49. "To be sure, an arbitration clause in a consumer contract with some characteristics of an adhesion contract `necessarily engenders more reservations than an arbitration clause in a different setting,' such as a collective bargaining agreement or a commercial contract between two businesses." Id., ¶ 50, quotingWilliams v. Aetna Fin.Co. (1998), 83 Ohio St.3d 464, 472. Nevertheless, in Taylor, the Supreme Court declined to require more specific disclosures when arbitration is concerned, reasoning that form contracts lower transaction costs and benefit consumers through lower prices. We believe *Page 13 
that whether some more stringent requirement should be imposed when a consumer contract requires arbitration is a policy matter the General Assembly should decide, possibly through an amendment to the Ohio Consumer Sales Practices Act, R.C. Chapter 1345.
 {¶ 26} "Substantive unconscionability involves those factors which relate to the contract terms themselves and whether they are commercially reasonable. Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been developed for this category of unconscionability. However, courts examining whether a particular limitations clause is substantively unconscionable have considered the following factors: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." ClickCamera Video, Inc., 86 Ohio App.3d at 834.
 {¶ 27} Hawkins argues that the arbitration clause is not commercially reasonable because it lacks mutuality of obligations. By excepting small-claims actions from its coverage, the clause permits Kentucky Check to utilize a judicial forum to prosecute Hawkins' failure to repay the *Page 14 
loan, but limits the parties to arbitration of all other claims, including any Hawkins might have.
 {¶ 28} The Supreme Court held in Taylor Bldg. Corp that "the obligations of the parties need not be exactly the same if the contract is supported by adequate considerations." Id., ¶ 66. The loan Kentucky Check made to Hawkins was adequate consideration. That the arbitration clause is commercially reasonable finds support in the fact that the clause requires Kentucky Check to advance costs for any arbitration it requests, avoiding a potential impediment to Hawkins' prosecution of his claim through arbitration.
 {¶ 29} In addition to procedural and substantive unconscionability, Hawkins argues that the arbitration clause should not be enforced because it is against public policy. Hawkins points to provisions in the clause waiving his rights to proceed as a private attorney general or through a class action, which are rights conferred on consumers by the CSPA. R.C. 1345.09(D). Hawkins relies on Eagle v. Fred Martin MotorCo., 157 Ohio App.3d 150, 2004-Ohio-829.
 {¶ 30} In Eagle, a consumer commenced an action against an auto dealer for violations of CSPA, alleging unfair, deceptive, and unconscionable acts and practices by the dealer when it sold her an automobile. The dealer invoked an *Page 15 
arbitration clause in the sales contract, and asked the common pleas court to stay the consumer's action pursuant to R.C. 2711.02. The court ordered a stay. The consumer appealed, arguing that the arbitration contract in its restrictions violated public policy.
 {¶ 31} The arbitration clause in Eagle contained restrictions against proceeding as a private attorney general and also imposed a confidentiality requirement. Reasoning that these provisions vanquished the remedial provisions of the CSPA by imposing arbitration costs and restricting access by other consumers to matters about which they ought know, the Court of Appeals of Summit County held that the arbitration clause violated public policy by its impact on society as a whole.
 {¶ 32} Eagle relied on the holding in Green Tree Fin. Corp.-Alabama v.Ran dolph (2000), 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed. 2d 373, which appears to have applied a different analysis. Green Tree held that "`so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the (remedial) statute serves its functions." Id., 531 U.S. at 90, quoting Gilmer v.Interstate/Johnson Lane Corp. (1991), 500 U.S. 20, 28, 111 S.Ct. 1647,1653, 114 L.Ed.2d 26. (See also: Mitsubishi *Page 16 Motors Corp. v. Soler Chrysler-Plymouth, Inc. (1985), 473 U.S. 614,105 S.Ct. 3346, 87 L.Ed.2d 444.) Other courts have held that statutory claims under both federal and state laws are presumed to be arbitrable, and are arbitrable absent any showing rebutting that presumption.Norcom Electronics Corp. v. CIM USA, Inc., (S.D.N.Y. 2000),104 F. Supp.2d 198.
 {¶ 33} As in Eagle, the arbitration clause in the present case prevents Hawkins from proceeding as a private attorney general, as well as in a class action, but it does not contain a confidentiality clause, which was a particular concern in Eagle. More importantly, nothing in the arbitration clause denies Hawkins any of the substantive rights conferred on him by CSPA and the Federal Fair Debt Collection Practices Act ("FDCPA") which his claims for relief invoke. Neither do those statutory provisions preclude or limit arbitration of claims brought in an action pursuant to them. Indeed, it has been held that FDCPA claims are arbitrable. Hodson v. Javitch, Block Rathbone, LLP (N.D. Ohio, 2008), 531 F.Supp. 2d 827.
 {¶ 34} The private attorney general and class action provisions of R.C. 1345.09(D) are procedural mechanisms that aid consumers in their prosecution of CSPA violations. They confer no additional substantive rights. The arbitration *Page 17 
clause in the present case preserves the statutory substantive rights and remedies Hawkins sought in the action he commenced. Therefore, and because no showing has been made that those statutory rights and remedies are not arbitrable, the arbitration clause in the contract between Hawkins and Kentucky Check is enforceable. The trial court did not err when it held the issues in the action Hawkins commenced are referable to arbitration, and stayed the litigation until arbitration is had. R.C. 2711.02.
 {¶ 35} The assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. And FAIN, J., concur.
Copies mailed to:
Lester R. Thompson, Esq.
Charles E. Ticknor, Esq.
Jennie K. Ferguson, Esq.
D. Wesley Newhouse, Esq.
 Hon. William B. McCracken *Page 1