[Cite as *Moran v. Riverfront Diversified, Inc.*, 197 Ohio App.3d 471, 2011-Ohio-6328.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

MORAN,                                          :

                                :          Appellate Case No. 24545

          Appellee,                       :

                                :          Trial Court Case No.
                                            10-CV-03696

v.                                              :

RIVERFRONT DIVERSIFIED, INC.,                   :
    d.b.a. Everdry Waterproofing,               :          (Civil Appeal from
                                :          Common Pleas Court)

                                :

          Appellant.                      :

                                :

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of December, 2011.

. . . . . . . . .

Craig T. Matthews & Associates, L.P.A., and Craig T. Matthews, for appellee.

Dinsmore & Shohl, L.L.P., and H. Toby Schisler, for appellant.

. . . . . . . . .

HALL, Judge.

{¶ 1} Riverfront Diversified, Inc., d.b.a. Everdry Waterproofing ("Everdry"), appeals from the trial court's decision and entry denying its motion to stay proceedings and to compel arbitration.[1]

---

[1] The caption of the trial court's ruling indicates that it sustained the motion. The body of the ruling makes clear,

**{¶ 2}** Everdry advances two assignments of error on appeal. First, Everdry contends that the trial court erred in failing to conduct a hearing before denying its motion. Second, Everdry claims that the trial court erred in refusing to enforce the parties' arbitration agreement.

**{¶ 3}** The record reflects that appellee Geraldine Moran contacted Everdry about repairing cracks in her home's foundation. In January 2009, Everdry representative Eddie Joiner inspected the home and gave Moran an estimate for the work. Moran and Joiner proceeded to sign a contract to have Everdry perform the work. The terms and conditions of the contract included the following language regarding arbitration:

**{¶ 4}** "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof."

**{¶ 5}** Shortly after the parties signed the contract, Everdry completed its work. Thereafter, on May 3, 2010, Moran filed a complaint against Everdry, alleging that the company had failed to repair her foundation. According to the complaint, the cracks had worsened since Everdry completed its work. Moran's complaint set forth statutory and common-law claims against Everdry. She sought actual damages of more than $20,000, statutory damages in excess of $62,000, and punitive damages of $180,000.

**{¶ 6}** In July 2010, Everdry moved to stay proceedings and to compel arbitration

however, that the caption contains a typographical error and that the motion was denied.

pursuant to the arbitration clause quoted above. Moran opposed the motion, arguing that the arbitration clause was procedurally and substantively unconscionable and, therefore, unenforceable. Everdry filed a reply in which it noted the absence of evidence to support Moran's claims. Attached to the reply was an affidavit from Eddie Joiner. In response, Moran filed a surreply in which she provided the trial court with her own affidavit.

{¶ 7} On March 21, 2011, the trial court filed its decision and entry denying Everdry's motion to stay proceedings and to compel arbitration. The trial court correctly analyzed the applicable law, which requires the opponent to an arbitration clause to prove that the clause is both procedurally and substantively unconscionable before the court will decline to enforce it. *Brownell v. Van Wyk*, Montgomery App. No. 24042, 2010-Ohio-6338, ¶ 26. *Brownell* further explains the considerations the trial court should make in determining procedural and substantive unconscionability.

{¶ 8} In evaluating the facts before it, the trial court stated:

{¶ 9} "In this case, the contract was a standard form contract prepared by Defendant and issued to Plaintiff. As such, the Court finds the contract was adhesive in nature. Moreover, Plaintiff has averred that she is 88 years old, lives at home, and has little business experience. Plaintiff's letter sent to the Defendant and attached as Exhibit 1 to Defendant's reply may bear on Plaintiff's claims, and tends to suggest a general level of comprehension by Plaintiff of the services rendered by Defendant. However, this evidence does not bear on the enforceability of the arbitration provision or Plaintiff's understanding of this provision. Based on the foregoing facts, the Court finds the arbitration provision was procedurally unconscionable.

{¶ 10} "As to whether the provision is substantively unconscionable, Defendant's estimator avers that he 'specifically went through the terms and conditions' with Plaintiff.

Plaintiff avers that she did not understand the arbitration provision, has never been involved in arbitration, and that the estimator did not explain that by signing the contract she would be giving up her right to have her day in court. Plaintiff avers that the estimator did not explain how the arbitration process would work, provide information about the arbitration process, explain that the arbitration process can be expensive, explain that by signing the contract she would have to pay for arbitration, or explain the papers that she signed when Defendant completed its work. Citing to the Construction Industry Arbitration Rules and Mediation Procedures, Plaintiff represents that she would be responsible for a $975 filing fee, administrative fees and various expenses, the arbitrator's hourly compensation fee (minimum 4 hours) and a final fee of $300. These projected costs have not been disputed. The damages sought by Plaintiff do not bear on the costs the Plaintiff will incur if her case is arbitrated, or on her awareness of those costs prior to signing the contract. The Court finds that the mechanics of the arbitration process and its costs were not explained to the Plaintiff, and therefore the arbitration provision is substantively unconscionable under the circumstances of this case."

{¶ 11} In its first assignment of error, Everdry contends that the trial court erred in failing to hold a hearing before denying its motion to compel arbitration. While it concedes that a hearing is not required before a trial court rules on a motion to stay proceedings, Everdry contends that the same is not true for a motion to compel arbitration. In support, Everdry relies on R.C. 2711.03, which provides: "*The court shall hear the parties*, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement." (Emphasis added.) See also *Garcia v. Wayne*

*Homes, L.L.C.* (Apr. 19, 2002), Clark App. No. 2001 CA 53, \*6 (noting that the statute "requires courts to conduct a hearing to determine the legitimacy of arbitration clause validity challenges").

{¶ 12} Upon review, we find that the trial court's failure to conduct an evidentiary hearing before ruling on Everdry's motion to compel arbitration is not inherently reversible error. Everdry never requested an oral hearing, and both parties submitted affidavits in support of their written arguments. At least three other Ohio appellate courts have concluded that a party waives its right to an R.C. 2711.03 hearing by failing to request one. *Hoppel v. Feldman*, Columbiana App. No. 09 CO 34, 2011-Ohio-1183, ¶ 41 (citing cases). The case upon which Everdry relies, *Brunke v. Ohio State Home Servs., Inc.*, Lorain App. No. 06CA008947, 2007-Ohio-3119, is distinguishable because the complaining party there had requested a hearing. We note, too, that the parties here were "heard" insofar as they submitted evidence to the trial court in the form of affidavits. See *Hoppel* at ¶ 42 (reasoning that "a party is 'heard' for the purposes of R.C. 2711.03 where the trial court accepts his or her affidavit").

{¶ 13} Defendant's Motion to Stay Proceedings and Compel Arbitration was filed on July 22, 2010, and the only evidentiary material presented was the attached home-repair contract, front and back, containing the arbitration clause. On August 5, 2010, the plaintiff homeowner filed Plaintiff's Response to Defendant's Motion to Stay Proceedings and Compel Arbitration, without any evidentiary material. On August 11, 2010, the defendant filed its Reply Memorandum in Support of the Motion to Stay Proceedings and Compel Arbitration, with Accompanying Affidavit of Eddie Joiner. In that reply, the contractor strongly argued that it was the plaintiff's burden to prove that the arbitration clause was procedurally and substantively unconscionable, and, because plaintiff presented no evidence

whatsoever, the motion to compel should be granted. Only thereafter did the plaintiff seek, and obtain, leave to submit her surreply, filed on September 16, 2010, which included the affidavit of plaintiff in opposition to the motion to compel. At that time, plaintiff argued, "Since the arbitration clause at issue in *Brunke* is identical to the arbitration clause in this case, *this Court should set an evidentiary hearing if it does not find as a matter of law that Everdry's motion is without merit.*" (Emphasis added.)

{¶ 14} Normally, we would determine that a party cannot fail to request a hearing below, submit written evidence to the trial court, and complain about the lack of a hearing only after obtaining an adverse ruling. But here, although the appellant did not request a hearing, the party that submitted the last permitted filing had requested a hearing. Moreover, the court did not determine as a "matter of law that Everdry's motion is without merit" as suggested by the plaintiff. The court's determination was a mixed question of law and fact based on the circumstances of this particular plaintiff's status. Therefore, although we will overrule appellant Everdry's first assignment of error, upon remand on the following second assignment of error, the court should conduct the evidentiary hearing requested by the plaintiff.

{¶ 15} The first assignment of error is overruled.

{¶ 16} In its second assignment of error, Everdry claims that the trial court erred in refusing to enforce the parties' arbitration agreement. In particular, Everdry disputes the trial court's finding that the arbitration clause at issue was procedurally and substantively unconscionable. In response, Moran asserts that the trial court properly found the clause unenforceable because it deprived her of any meaningful choice and contained terms unreasonably favorable to Everdry.

{¶ 17} In resolving the parties' dispute, we turn first to R.C. 2711.01(A), which reflects "a strong policy favoring arbitration of disputes." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 25. The statute provides: "A provision in any written contract * * * to settle by arbitration a controversy that subsequently arose out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."

{¶ 18} One ground for revocation of a contract is unconscionability. *Brownell v. Van Wyk*, Montgomery App. No. 24042, 2010-Ohio-6338, ¶ 20. When a party claims that an arbitration provision in a contract is unconscionable, that party bears the burden of proving both procedural and substantive unconscionability. Id. at ¶ 26. Whether an arbitration provision is unconscionable is a question of law that we review de novo. Id. However, we review a trial court's factual findings in support of its unconscionability determination with deference. Id. at ¶ 22-23.

{¶ 19} To determine whether an arbitration provision is procedurally unconscionable, courts consider the circumstances surrounding the making of the agreement. Id. at ¶ 27. Relevant considerations include the parties' age, education, intelligence, business acumen and experience, who drafted the contract, whether alterations in the printed terms were possible, and whether alternative sources of supply for the product or service were available. Id. Other factors that may indicate procedural unconscionability include "'a belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract;

knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable to reasonably protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors.'" Id. at ¶ 28.

**{¶ 20}** To determine whether an arbitration provision is substantively unconscionable, courts focus on the terms of the provision itself. "'Factors courts have considered in evaluating whether a contract is substantively unconscionable include the fairness of the terms, the charge for service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability.'" Id. at ¶ 29, quoting *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 33. "'No bright-line set of factors for determining substantive unconscionability has been adopted * * *. The factors to be considered vary with the content of the agreement at issue.'" *Brownell*, 2010-Ohio-6338, ¶ 29, quoting *Hayes* at ¶ 33.

**{¶ 21}** Some of the facts submitted by affidavit were in dispute. Eddie Joiner's affidavit states that he went through the terms and conditions of the contact with Ms. Moran before she signed it. "At no point did Ms. Moran express to me, nor did it appear to me from my observations, that she lacked the ability to understand and comprehend any of the terms of the agreement." Ms. Moran's affidavit admits that she signed the contract but argues she should not be held to its terms by stating, "I did not understand the provision regarding arbitration," and "Everdry's representative did not explain to me that, by signing the Contract, I would be giving up my right to have a day in court."

**{¶ 22}** Based on this scant record, the trial court cited four reasons for finding the

arbitration clause procedurally unconscionable: (1) it was "adhesive in nature," (2) Moran is 88 years old, (3) Moran lives at home, and (4) she has "little business experience." Although the record supports these factual findings, we disagree that those facts alone are sufficient to support the trial court's legal conclusion that they establish procedural unconscionability.

{¶ 23} "A contract of adhesion is one in a standardized form that is prepared by one party and offered to the weaker party, usually a consumer, who has no realistic choice as to the contract terms." *Hawkins v. O'Brien*, Montgomery App. No. 22490, 2009-Ohio-60, ¶ 25. The fact that a contract is adhesive, however, does not necessarily make it unconscionable. This court has recognized that "an unequal bargaining position is not, in and of itself, a sufficient reason in law or equity to hold that arbitration agreement unenforceable." Id. at ¶ 24. "There must be some evidence that, in consequence of the imbalance, the party in the weaker position was defrauded or coerced into agreement to the arbitration clause." Id.

{¶ 24} As set forth above, aside from the adhesive nature of the arbitration clause (i.e., it was contained in a preprinted form presented by Everdry),[2] the only other evidence cited by the trial court to find procedural unconscionability was Moran's age, the fact that she lived at home, and her lack of business experience. Despite her advanced age and lack of business experience, nothing in the record suggests that Moran suffered from any physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of the agreement. *Hayes,* 122 Ohio St.3d 63, 2009-Ohio-2054, ¶ 24.

{¶ 25} Although she was 88 years old, Moran lived independently and managed her own affairs. She initiated contact with Everdry and requested an estimate to have her home

---

[2] But see *Taylor*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶50 (recognizing that few consumer contracts are negotiated item-by-item and noting that form contracts actually can benefit consumers by reducing the cost of doing business and resulting in lower prices).

repaired. After receiving the estimate, she signed a contract indicating that she had read the "terms and conditions," which contained the arbitration clause at issue. The clause was not hidden from view. It was printed in the same size type as all other terms and conditions. Cf. *Taylor*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 46 ("As the trial court observed, simply showing that a contract is preprinted and that the arbitration clause is a required term, without more, fails to demonstrate the unconscionability of the arbitration clause. The arbitration clause in this case appeared in standard, rather than fine, print and was not hidden. The Benfields initialed the arbitration clause and signed the contract as a whole"). As this court noted in *Hawkins*, "'[t]he law does not require that each aspect of a contract be explained orally to a party prior to signing." Id., 2009-Ohio-60, at ¶ 23; see also *Garcia v. Wayne Homes, L.L.C.* (Apr. 19, 2002), Clark App. No. 2001 CA 53, *8 (observing that "there is no requirement that an arbitration clause be explained orally to a party prior to signing where the provisions at issue were not in fine print, were neither hidden nor out of the ordinary, and were not misrepresented to the signatory"). "'If a person can read and is not prevented from reading what he signs, he alone is responsible for reading what he signs.'" *Hawkins* at ¶ 23, quoting *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 14, 552 N.E.2d 207. "[W]hether some more stringent [disclosure] requirement should be imposed when a consumer contract requires arbitration is a policy matter the General Assembly should decide * * *." Id. at ¶ 25.

{¶ 26} Thus the only evidence before the trial court was that Moran, a self-sufficient elderly woman, signed a contract containing a clear arbitration provision that she acknowledged having read. There was no direct evidence that Moran suffered from any apparent infirmities that she asked questions about the arbitration provision prior to signing.

Although the parties may have lacked equal bargaining power, we see no evidence here that in consequence of the imbalance in bargaining power, Moran "was defrauded or coerced into agreement to the arbitration clause." *Hawkins*, at ¶ 24. Based on our de novo review, we find that the factual record is insufficient to support a finding of procedural unconscionability.

{¶ 27} We also believe that the record is insufficient to support the trial court's determination that the arbitration provision was substantively unconscionable. The trial court found substantive unconscionability due to the cost of arbitration and the fact that "the mechanics of the arbitration process and its costs were not explained to the Plaintiff." With the available facts, however, Everdry had no obligation to explain the arbitration to Moran, who, on this record, does not appear to have been misled, expressed no lack of understanding at the time, and asked no questions.

{¶ 28} As for costs, the arbitration clause itself stated that arbitration would be governed by "the Construction Industry Arbitration Rules of the American Arbitration Association." The trial court was critically concerned about the seemingly high $975 filing fee, administration fees, arbitrator's compensation, and final fee of $300 for filing an AAA arbitration complaint.   The factual representation as to these fees appears only in argument in Plaintiff's Response to Defendant's Motion to Stay Proceedings and Compel Arbitration. True, the Construction Industry Arbitration Rules of the American Arbitration Association provide for such fees. However, whether plaintiff's claim would be assigned to that track is not so clear. In apparent recognition of the modest nature of homeowner-construction disputes, the AAA adopted supplementary procedures for home construction disputes in 2003. These rules have since been renamed as the AAA Home Construction Arbitration Rules and are suggested for contracts for "residential construction and remodeling." Home Construction

Arbitration Rules and Mediation procedures effective June 1, 2007, preamble. The supplementary rules, which have morphed into the Home Construction Rules, applied whenever the contract specifically referenced the supplementary rules "or where the parties mutually agree to utilize these Procedures to resolve a dispute relating to residential construction." The importance of the then supplementary, and now Home Construction, rules is that they require only a $150 filing fee for a homeowner for a dispute level between $10,000 and $75,000. It may very well be that an evidentiary hearing will reveal that the Construction Industry Rules of the American Arbitration Association are the only ones that apply, but these facts would benefit from evidentiary support. Moreover, if the Construction Industry Arbitration Rules are the only ones that apply, the trial court may also choose to consider whether the failure to require arbitration pursuant to AAA rules specifically applicable to the home-construction industry (which were in existence in some form since 2003) affects an arbitration clause in a 2009 contract.

{¶ 29} Moreover, this court has determined that "proof of costs alone will not invalidate an arbitration clause." *Garcia*, 2002 WL 628619, *13. To establish unconscionability, Moran would have to present some evidence regarding her "ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims or cause arbitration to be an unreasonable alternative to the judicial forum." Id.; see also *Taylor*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 58-59 (reasoning that an arbitration clause will not be held unconscionable based on prohibitive fees absent evidence of the fees *and* the claimant's inability to pay them); *Rickard v. Teynor's Homes, Inc.* (N.D.Ohio 2003), 279 F.Supp.2d 910, 918 ("The AAA has an Administrative Fee Waiver/Deferral/Hardship

Provision that provides: 'In cases where an AAA administrative fee applies, parties are eligible for consideration for a waiver or deferral of the administration fee if their annual gross income falls below 200% of the federal poverty guidelines.' Because plaintiff has provided no evidence of her income or her ability (or inability) to pay the costs of arbitration, it is unclear whether she would qualify for the waiver. Moreover, because plaintiff has not provided any income information, she has not demonstrated that the AAA rules deter a substantial number of similarly situated persons from attempting to vindicate their statutory rights"). It is not clear on this record that the arbitration costs she cites are prohibitively expensive or that they necessarily would exceed her litigation costs.

{¶ 30} In opposition to the foregoing analysis, Moran relies heavily on *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, to argue that the arbitration clause at issue was procedurally and substantively unconscionable. The facts of *Williams*, however, are notably different from the facts before us. In *Williams*, the defendant company conspired with a salesman to defraud unsuspecting, elderly homeowners in low-income neighborhoods. The conspiracy involved having the homeowners take out secured loans for home improvements that they could not afford and that would not be completed. In refusing to enforce an arbitration clause in the homeowner-plaintiff's contract, the Ohio Supreme Court opined: "The record in this case clearly would support a finding that the arbitration clause violated principles of equity, given all of the attendant facts and circumstances." Id. at 472. The court added: "When the further complete situation in this case is taken into account, *i.e.,* Williams's evidence regarding the conspiracy * * * as the fundamental reason for her entering into the loan agreement in the first place, and also the questionable conditions under which the dispute would be submitted to arbitration as revealed in the record, there is further support for the

invalidity of the arbitration clause." Id.

{¶ 31} In the years since *Williams*, the Ohio Supreme Court has recognized the extreme facts of that case and the role those facts played in the outcome. In *Taylor*, for example, the court upheld an arbitration clause in a consumer sales agreement, noting that "this is not a case like *Williams*, in which the defendant finance company was found to have conspired to defraud the plaintiff." *Taylor,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 51; see also *Baker v. Schuler*, Clark App. No. 02CA0020, 2002-Ohio-5386, ¶ 48 (upholding an arbitration agreement and finding "the circumstances in *Williams* to be very different than those in the present case"). We likewise find that the circumstances in Moran's case do not include the fraudulent aspects that were the driving force in *Williams.*

{¶ 32} Finally, Moran cites the Ninth District Court of Appeals' per curiam decision in *Brunke v. Ohio State Home Servs., Inc.*, Lorain App. No. 08CA009320, 2008-Ohio-5394, which she contends found an identical arbitration clause unconscionable. Moran's reliance on Brunke is unpersuasive. The issue of procedural unconscionability in particular is fact-specific because it concerns the circumstances surrounding the making of the agreement. Cf. *Mills v. Rusk Industries,* Sandusky App. No. S-04–027, 2005-Ohio-5884 (reviewing an Everdry arbitration clause identical to the one in Moran's contract and finding no procedural or substantive unconscionability). In *Brunke,* the homeowners who entered into a contract to have their basement waterproofed both struggled to read and demonstrated poor comprehension skills—facts that were known to the company. Id. at ¶ 12, 15. The trial court in *Brunke* relied on these facts, which are not in the record in Moran's case, along with the company's failure to explain the arbitration clause, to find procedural unconscionability. Notably, a dissenting judge in *Brunke* found no procedural unconscionability despite the

disturbing facts, noting, among other things, the company's lack of a duty to explain the arbitration clause. The differing facts of *Brunke* make it distinguishable from Moran's case.

**{¶ 33}** With regard to substantive unconscionability, the *Brunke* majority opined that "prohibitive arbitration costs and fees alone may render an arbitration provision substantively unconscionable based on a case-by-case determination." Id. at ¶ 16. On its face, this statement is contrary to our determination several years later in *Garcia* that "proof of costs alone will not invalidate an arbitration clause." In any event, as we have indicated, the facts about the eventual costs of arbitration are uncertain. Also, the present case lacks the fraud that drove the *Williams* decision. In addition, although the contract Moran signed had characteristics of an adhesion contract, the arbitration provision was as transparent as all other terms and conditions, Moran had a full opportunity to review the contract, and there is no evidence of compulsion or duress. Also unlike *Williams*, Moran herself initiated contact with Everdry about doing business and could have solicited bids from other home-repair companies, who may or may not have required arbitration. Cf. *Baker*, 2002-Ohio-5386, at ¶ 48. For all of the foregoing reasons, *Brunke* is distinguishable.

**{¶ 34}** Because we determine that the facts submitted to the trial court by affidavit are insufficient to support a finding of procedural and substantive unconscionability, we vacate the overruling of the motion to compel arbitration. Nevertheless, we note that the plaintiff had requested an evidentiary hearing on the matter, and we remand the case for the trial court to conduct such a hearing and for further proceedings consistent with this opinion.

Judgment accordingly.

. . . . . . . . . . . . . .

DONOVAN, J., concurs.

FROELICH, J., concurs in judgment.

FROELICH, Judge, concurring in judgment.

{¶ 35} I concur in the judgment. Although Ohio law favors arbitration, I am just not as sure, especially prior to the evidentiary hearing required by our remand, that there is no procedural or substantive unconscionability in the relationship between this buyer and this seller.

. . . . . . . . . .