OPINION
{¶ 1} Ellen Shepherd ("appellant"), appeals the judgment entry of the Geauga County Court of Common Pleas finding her liable to John Russin ("appellee") under a contract. At issue is whether appellant is personally liable under the instrument and whether the stipulated interest rate complies with the Ohio usury law. For the reasons that follow, we affirm.
 {¶ 2} Statement of Facts and Procedural History *Page 2 
 {¶ 3} Appellee is a mechanic and lives in Montville Township, Ohio. He met appellant through her sister. Appellant approached him about making an investment in her company. She presented an agreement to appellee captioned a "venture capital agreement" ("agreement"), pursuant to which he was to invest funds in a limited liability company she claimed to represent called Liberty Metalliding Technologies, LLC ("LMT").
 {¶ 4} The agreement stated that LMT was "incorporated in the Commonwealth of Virginia and doing business in the State of Pennsylvania, having offices at 505 Liberty St., Warren, Pennsylvania * * *." According to the agreement, appellee would "invest" $10,000 in LMT "in exchange for a 30 % annual return on all moneys invested and a one percent equity position in [LMT]." The agreement provided: "[a]ll principal and interest will be returned to [appellee] by [LMT] no later than August 21, 1999. There will be no prepayment penalties." The agreement contained a section handwritten by appellant, which gave appellee an option to invest an additional $10,000 for an additional one per cent equity interest in LMT at thirty per cent interest on the same terms. Appellee agreed to enter the agreement, and gave appellant a check in the amount of $10,000. At appellant's request, the check was made payable to her.
 {¶ 5} Two years later, on May 12, 1999, appellant wrote a letter to appellee in which she said, "we [are] right on track" and "we will meet the agreed upon date of August 22, 1999." She said she was in the process of incorporating "Liberty Technologies," into which the existing limited liability company would be absorbed. She said she needed funds now, and asked appellee to invest the additional $10,000 *Page 3 
referenced in the option in exchange for thirty per cent interest and an additional one per cent ownership interest.
 {¶ 6} In response to this letter, appellee made an additional investment under the original agreement, but in the amount of $7,000 because he did not have the entire $10,000 to invest. Appellant accepted appellee's check for $7,000, which, again at her request, was made out to her personally.
 {¶ 7} Appellee testified he relied on appellant when she represented that the company he was investing in was a "registered, existing company." Appellant never returned any of the principal or interest due under the agreement.
 {¶ 8} Appellant testified she is experienced in starting up and operating businesses. She admitted that while the agreement represented that LMT was incorporated in Virginia and doing business in Pennsylvania, it had not been incorporated and was not a limited liability company. She said that she never incorporated LMT and that it was a dba for her company Liberty Metalliding LLC ("LM").
 {¶ 9} Appellant deposited appellee's $10,000 check in a personal checking account she opened with that money. She said she did not open a company account with the funds because the bank's fee to open a company account was too high. She said the account was for operating costs for the business. She said none of appellee's funds were used for her personal expenses. She also cashed and deposited in her checking account appellee's check for $7,000, and then gave the funds to her husband as "consulting fees," which, she testified, was a business expense.
 {¶ 10} She testified her intent was to incorporate the company using appellee's funds. *Page 4 
 {¶ 11} Then, suddenly, on May 19, 2000, appellant wrote a letter to appellee advising she would not honor the agreement. She said the newly-formed corporation cannot perform the agreement because it will not be issuing any non-voting stock. She said she would return "all the money he loaned" her with interest in July 2000. She testified appellant's interest in the company was to be in non-voting stock. She admitted, however, the agreement did not state the interest would be in voting or non-voting stock. She also admitted she controlled the new corporation as well as the decision whether it would issue non-voting stock.
 {¶ 12} Then, on June 5, 2000, appellant wrote a letter to appellee in which she said that because he only loaned her $5,000, rather than the $10,000 mentioned in the agreement, he had breached it. She said "an investment of $10,000 would have allowed him to purchase 1% of non-voting stock in a company anticipated but not yet formed. Hence, the term `venture capital.'" She said, "[b]ecause I was desperate for cash, I accepted your money on both occasions." She said his failure to make the full $10,000 payment "nullifies this agreement." At trial, appellant admitted that appellee had paid her the $10,000 and so had not breached the agreement.
 {¶ 13} On May 24, 2003, appellant wrote a letter to appellee's attorney in which she gave a different reason for her failure to honor the agreement. She said: "I learned later, John does not qualify as an investor. * * * I did not know he did not qualify in August of 1997. In fact, he led me to believe the opposite. The original `agreement,' [sic] then, basically became a `gentleman's' agreement * * *."
 {¶ 14} When asked to explain this statement, she testified: *Page 5 
 {¶ 15} "[H]e invested as what's called a friend and family round [sic]. I wanted to make sure that he could afford the investment, which I did, before I accepted any money on behalf of Liberty.
 {¶ 16} "However, when we got to the stage where we were going to be registering with the Securities and Exchange Commission, he did not qualify as an investor for that round of funding * * *."
 {¶ 17} Appellant admitted she prepared the agreement, and it did not indicate that the obligor was LM dba LMT so there is no way appellee would have known LMT was a dba for LM. She testified that when she signed the agreement in August 1997, the only company she had was LM. It had no assets and dissolved. In 2000, she merged LM into Liberty Applied Technologies, Inc. ("Applied"). In 2002, she changed its name to Liberty Technologies, Inc. That company became defunct and dissolved in 2004.
 {¶ 18} The trial court, in its April 4, 2006 judgment entry, found that appellant attempted to raise money for a business she was promoting by entering into an agreement with appellee. The court found that while the agreement refers to the funds to be provided by appellee as "monies invested" and "venture capital," it contained provisions characteristic of a promissory note, such as a promise to return all "principal and interest" by August 21, 1999, and a provision that there will be no prepayment penalty.
 {¶ 19} The court also found that while the obligor is shown as LMT, no such limited liability company was ever formed. A new company was to be organized later to carry out the business plan or an existing company operated by appellant, i.e. LM, *Page 6 
would be reformulated to accomplish the purpose. In 2000, that company was merged into Applied, another company operated by appellant. Her companies eventually failed financially and dissolved.
 {¶ 20} The court found that appellant had appellee make out two checks totaling $17,000 to her personally. She deposited the funds in her own account in her name. The account designated her as a "sole proprietor." All funds were used to start up the business contemplated by the agreement.
 {¶ 21} The court found appellee was an unsophisticated investor who justifiably relied on appellant to undertake the steps necessary to pursue the business of LMT. Further, appellant admitted she was desperate for cash.
 {¶ 22} The court found appellant personally liable to appellee because she failed to set up LMT or any company which could perform under the agreement. Appellant misrepresented to appellee that the company was already incorporated and operating. Further, the company appellant eventually organized could not give appellee the non-voting stock to which appellant admitted he was entitled. The court found that the company appellant promoted and organized to perform the business referred to in the agreement was, thus, predestined by appellant to breach that agreement even if it had not failed financially.
 {¶ 23} The court found the agreement promised appellee's principal and interest would be returned to him no later than August 21, 1999; however, no part of it was ever returned. While appellee risked receiving worthless stock, under the agreement he was entitled to receive his $17,000 back plus interest. The court found the two payments appellee made to appellant were governed by the terms of the agreement. *Page 7 
 {¶ 24} Appellant appealed the court's judgment entry, asserting the following assignments of error:
 {¶ 25} "[1.] The trial court erred in holding that a minor misnomer of the corporate name within a written agreement renders defendant/appellant, Ellen Shepherd, personally liable.
 {¶ 26} "[2.] The trial court erred in holding that the `venture capital agreement' was a `loan agreement' between two individuals to which 30% interest may legally apply."
 {¶ 27} The "Misnomer" Theory
 {¶ 28} Under her first assignment of error, appellant argues that the trial court was not justified in concluding that by including the word "Technologies" as part of the name of the obligor in the agreement, appellant purported to represent a company which never existed, resulting in her personal liability. She argues the addition of this word was a minor misnomer of LM so that company should be held solely liable on the agreement. It is undisputed that LM is a defunct company with no assets.
 {¶ 29} Our review of the record reveals that appellant never alleged in her answer and counterclaim that LMT was a misnomer. Further, appellant did not make this argument in trial.
 {¶ 30} It is well-settled that appellate courts "do not consider questions not presented to the court whose judgment is sought to be reversed." State ex rel. Porter v. Cleveland Dept. of Public Safety
(1998), 84 Ohio St.3d 258, 259. This court has held that a party's failure to raise an issue at the trial court level acts as a waiver of the issue on appeal. Sekora v. General Motors Corp. (1989),61 Ohio App.3d 105. An appellate *Page 8 
court may decline to consider errors which could have been brought to the trial court's attention and hence avoided or corrected. Schade. v.Carnegie Body Co. (1982), 70 Ohio St.2d 207, 210.
 {¶ 31} Further, a party who receives an adverse judgment in the trial court may not expand his claims in the appellate court to maximize his chances of reversal. Shumaker v. Ohio Dept. of Human Serv. (1996),117 Ohio App.3d 730.
 {¶ 32} Issues that are not raised or tried in the trial court and are not addressed in the court's judgment may not be raised for the first time on appeal. State ex rel. Martin v. Cleveland (1993),67 Ohio St.3d 155; see, also, Sellers v. Morrow Auto Sales (1997),124 Ohio App.3d 543, 547. A party must adhere on appeal to the theory on which the case was tried in the trial court. A theory that was not introduced in the trial cannot be raised for the first time on appeal. Federal DepositIns. Corp. v. Willoughby (1984), 19 Ohio App.3d 51.
 {¶ 33} Appellant argued below that LMT was a dba of her duly-filed company LM. She never advanced her "minor misnomer" theory in the trial court. That court, therefore, never had an opportunity to consider this issue. This argument is, therefore, waived and cannot be considered for the first time on appeal.
 {¶ 34} In any case, the record does not support appellant's contention that her use of the term "Technologies" in the name of the obligor was a misnomer. A "misnomer" is defined as a mistake in a name. Black's Law Dictionary (Rev. 4 Ed., 1968), 1151. A review of appellant's trial testimony reveals that her use of the name LMT was not a mistake, but rather was intentional. As such, it was not a misnomer. She testified she used this name because they had "refined" the name Liberty *Page 9 
Metalliding, LLC, and "started calling [themselves] Liberty Metalliding Technologies." She testified as follows:
 {¶ 35} "Q. * * * Why did you feel the need if you did to do business under the name Liberty Metalliding Technologies versus Liberty Metalliding?
 {¶ 36} "A. Because Metalliding is one technology, and we realized as we got more involved in the technology that it would require enabling technologies in order to make it work.
 {¶ 37} "So we felt we needed to clarify, make that distinction to our community."
 {¶ 38} While we do not comment on the logic of appellant's explanation concerning why she allegedly started to use the name LMT rather than LM, appellant nevertheless admitted it was not a misnomer. Appellant's testimony indicates the inclusion of the term "Technologies" was a conscious decision on her part to use a different or "refined" name.
 {¶ 39} Further, the record does not support her argument that the change in the name was minor. "It has been observed that `[t]he common misnomer case is concerned with substituting a middle initial or substituting `Incorporation' in place of `Company.' The errors are usually of a minor nature. * * *" State Farm Mutual Automobile Ins. Co. v.Sandhu (Oct. 16, 1986), 8th Dist. No. 51218, 1986 Ohio App. LEXIS 8741, *3; accord, Bykova v. Szucs, 8th Dist. No. 87629, 2006-Ohio-6424, at ¶ 3. Appellant's use of the name "Liberty Metalliding Technologies, LLC" instead of "Liberty Metalliding LLC" in the agreement was not a minor clerical error because it added a substantial new term. This is evidenced by appellant's admission that she consciously used this name because it had a different connotation than Liberty Metalliding LLC. *Page 10 
This testimony is directly contrary to appellant's argument on appeal that the use of the name LMT was a minor misnomer.
 {¶ 40} Appellant's first assignment of error is not well-taken.
 {¶ 41} R.C. § 1343.01 Rate of Interest
 {¶ 42} Under her second assignment of error, appellant argues that because the court found her to be personally liable under the agreement, it ceased to be a "business loan" and became a loan to an individual, subject to the eight per cent limit set forth at R.C. 1343.01. She argues that the court erred in awarding appellee thirty per cent interest as stipulated by the parties in the agreement.
 {¶ 43} We note that appellant never challenged the interest rate in her answer and counterclaim. Further, appellant never argued at any time prior to the entry of final judgment that the thirty per cent interest rate violated the Ohio usury law. It is well-settled that the failure to raise an affirmative defense in the trial court results in a waiver of that defense. Farm Credit Servs. of Mid-America v. Runyan (May 28, 1999) 2d Dist. No. 98CA28, 1999 Ohio App. LEXIS 2397, *7. A usurious rate of interest is an affirmative defense. Id. at 6. We, therefore, hold that appellant waived the argument presented in her second assignment of error.
 {¶ 44} In any event, the record does not support appellant's argument that the thirty per cent interest rate stipulated by the parties violates R.C. 1343.01. R.C. 1343.01(A) provides in pertinent part:
 {¶ 45} "The parties to a bond, bill, promissory note, or other instrument of writing for the forbearance or payment of money at any future time, may stipulate therein for *Page 11 
the payment of interest upon the amount thereof at any rate not exceeding eight per cent per annum payable annually, except as authorized in division (B) of this section."
 {¶ 46} R.C. 1343.01(B) lists six exceptions to the eight per cent maximum interest rate. That section provides in pertinent part:
 {¶ 47} "Any party may agree to pay a rate of interest in excess of the maximum rate provided in division (A) of this section when:
 {¶ 48} "(5) The instrument is payable * * * in one installment * * *.
 {¶ 49} "(6)(a) The loan is a business loan to a business association or partnership, a person owning and operating a business as a sole proprietor; any persons owning and operating a business as joint venturers, joint tenants, or tenants in common; any limited partnership; or any trustee owning or operating a business or whose beneficiaries own or operate a business * * *."
 {¶ 50} R.C. 1343.01(B)(6)(b) defines "business" as: "[A] commercial, agricultural, or industrial enterprise which is carried on for the purpose of investment or profit. `Business' does not mean the ownership or maintenance of real estate occupied by an individual obligor solely as his residence."
 {¶ 51} The agreement leaves little doubt that it evidences a business loan. The agreement itself states that the loan was to a limited liability company which had been incorporated and was currently doing business. The agreement is captioned a "venture capital agreement." The agreement states that its purpose is for appellee to invest funds in the company, in exchange for which appellee is promised a thirty per cent interest rate and equity ownership in the company. Appellant admitted she drafted the *Page 12 
agreement, and she did not dispute any of the foregoing in trial or before the entry of final judgment.
 {¶ 52} Moreover, appellant testified appellee contracted with her company, not her. She referred to a series of letters she wrote to appellee in which she confirmed the loan was made to her company. In these letters appellant refers to appellant's loan being used as "venture capital." She testified that the company that she was going to incorporate would receive appellant's investment, and that she used the funds appellee invested solely for the company's operating expenses. She further testified that none of the funds she received from appellee were used for her personal expenses.
 {¶ 53} During the trial, appellant did not dispute that the transaction was a business loan or that its purpose was to provide capital for her company. In fact, she testified it was a business loan to her company and not a loan to her. For the first time on appeal, she argues that in holding appellant personally liable, the trial court converted the agreement into a personal loan to an individual. While appellant has waived this argument on appeal, it is nevertheless unsupported by the record. The court found appellant liable because, by her own admission, the company which was to receive appellee's money, LMT, was never formed, and the corporation appellant formed in 2000, Applied, was not capable of performing under the agreement.
 {¶ 54} Appellant's failure to incorporate LMT or any company capable of performing under the agreement resulted in her personal liability, but did not change the essential purpose of the contract and convert it into a personal loan. Appellant may not use the trial court's determination, post hoc, as a weapon to assail the clear intent and plain language of the agreement which explicitly states the purpose for which the capital *Page 13 
would be used, viz., to invest in a purported corporation. The agreement was and is a business loan. The record thus does not support appellant's argument that the loan was a personal loan and subject to R.C.1343.01(A).
 {¶ 55} Further, the record does not support appellant's claim that the note was payable in installments and thus subject to the maximum eight per cent interest rate. A stipulated interest rate in excess of eight per cent is enforceable where repayment of the loan is due in one installment. R.C. 1343.01(B)(5). In Guisinger v. Arndt (June 8, 1990), 5th Dist. No. CA-955, 1990 Ohio App. LEXIS 2458, the defendant signed a note for $25,000, which provided the principal was "due and payable on or before two years from the date of this note." The court held that the exception at R.C. 1343.01(B)(5) applied because the principal and interest were due in one installment. The fact that the note could have been paid in multiple payments within the two-year period did not mean the note was payable in installments. The court held that unless the debtor was required to make consecutive monthly payments, the subject exception applied to allow interest greater than eight per cent.
 {¶ 56} The agreement at issue here provides: "All principal and interest will be returned to [appellee] by Liberty no later than August 21, 1999." The language concerning the due date in Guisinger is virtually identical to the provision concerning the due date here. The record therefore also supports the application of the subject exception.
 {¶ 57} Further, we do not agree with appellant's claim that appellee's loan of $7,000 was made pursuant to a separate, verbal agreement. The agreement allows for *Page 14 
an option to make a second investment of $10,000, and we cannot say the trial court erred in finding that appellee made his $7,000 loan pursuant to the agreement.
 {¶ 58} Appellant's second assignment of error is without merit.
 {¶ 59} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed.
COLLEEN MARY OTOOLE, J.,
ROBERT A. NADER, J., Ret., Eleventh Appellate District, sitting by assignment, concur. *Page 1