[Cite as *JPMorgan Chase Bank, N.A. v. Gallabrese*, 2025-Ohio-733.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

JPMORGAN CHASE BANK, N.A.,

Plaintiff-Appellee,

v.

MATTHEW GALLABRESE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 JE 0015

---

Civil Appeal from the
Steubenville Municipal Court of Jefferson County, Ohio
Case No. 23-CVH-353

**BEFORE:**
Carol Ann Robb, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Thomas R. Myers , Atty. Zach McKendrick*, Lyons, Doughty & Veldhuis P.C, for Plaintiff-Appellee and

*Matthew R. Gallabrese,* pro se.

Dated: March 5, 2025

**Robb, P.J.**

{¶1} Defendant-Appellant Matthew R. Gallabrese appeals the decision of the Steubenville Municipal Court granting summary judgment to Plaintiff-Appellee JPMorgan Chase Bank, N.A. on a credit card account. Appellant claims he sufficiently raised triable issues of fact as to whether the contract was valid and enforceable based on his unconscionability argument. He also claims the contractual interest rate was limited by the 8% usury statute. Lastly, he asserts a due process violation based on his belief that the trial court suggested the bank file a summary judgment motion while denying the extension requested by the bank. For the following reasons, the trial court's judgment is affirmed.

STATEMENT OF THE CASE

{¶2} On October 17, 2023, the bank filed a complaint against Appellant seeking $9,832.62 on a credit card account. This was the balance prior to charge-off, as evidenced in an attached credit card statement due June 21, 2023. The complaint specified the bank would not be requesting postjudgment interest and was not seeking "post-charge-off" interest (i.e., prejudgment interest on the balance in the final statement).

{¶3} Appellant filed an answer, generally denying each allegation for want of knowledge. The answer contained no affirmative defenses.

{¶4} The initial scheduling order provided a March 29, 2024 deadline for dispositive motions. (12/19/23 J.E.). The bank moved for an extension of the dispositive motion deadline in order to obtain an original affidavit to support such a motion. The court granted the motion, setting the new dispositive motion deadline for May 31, 2024. (3/19/24 J.E.).

{¶5} The bank's second motion on May 22, 2024 requested an additional sixty days for the same purpose. The court denied the motion (in part), stating the trial was set for June 28, 2024 but "will be canceled pending ruling on any dispositive motion that may be filed between now and the trial date." (5/23/24 J.E.).

{¶6} On June 25, 2024, the bank filed a motion for leave to file a summary judgment motion instanter. The same day, the court accepted the summary judgment motion as filed and canceled the trial date pending a ruling on the motion.

{¶7} Initially, the bank's summary judgment motion asserted the claim for the amount due was established by Appellant's failure to respond to the bank's discovery requests. The bank's February 12, 2024 request for admissions was attached as an exhibit with a corresponding notice of service on Appellant (filed with the court on February 15, 2024).

{¶8} Regardless, the bank pointed to the affidavit of its authorized representative to establish the elements of the claim and the amount due. As explained by the affiant, Appellant opened the account to obtain credit in 2013, subsequently used the account to make charges, tendered his last payment on October 21, 2022, and made his last charge on November 15, 2022. The affiant also attested the account was charged-off with $9,832.62 remaining as the balance and the bank was the original creditor (i.e., this was a first-party debt as opposed to a debt being collected by a debt buyer after charge-off).

{¶9} The affidavit incorporated relevant business records including the card member agreement and credit card statements. The card member agreement explained that after the zero interest introductory period, the annual percentage rate would be 18.99% variable based on the prime rate.

{¶10} The bank's summary judgment motion pointed to Ohio law on how acceptance of an offer of a credit card agreement occurs through use of the card thereby constituting the binding contract. The motion also cited federal law governing credit card agreements, limiting the period for preservation of statements, and preempting state law.

{¶11} Appellant filed a response to the summary judgment motion and subsequently a memorandum in support of his response. Appellant did not submit an affidavit, discuss his failure to respond to the request for admissions during discovery, or seek an extension. His response said the primary issue of fact was whether the contract was procedurally and substantively unconscionable. He referred to unequal bargaining power whereby the bank was in a superior position from which to choose the contract terms (such as the interest rate) and had a legal advantage over card members (due to having more money to hire lawyers). Concluding the agreement was not valid and enforceable, he claimed the bank failed to show "mutual assent, offer, consideration, capacity, and legality."

Case No. 24 JE 0015

**{¶12}** Appellant then challenged the interest rate applied by the bank before charge-off. Citing an article allegedly obtained from the bank's website about an Ohio headquarters renovation, Appellant argued Ohio law sets a maximum annual interest rate of 8% and any contracted rate over this would be considered usurious under R.C. 1341.01(A).[1]

**{¶13}** On July 25, 2024, the trial court granted summary judgment for the bank in the amount requested in the complaint. The court explained the card member agreement provided the terms (including the rate), the credit card statements showed Appellant used the card, and his use of the card thereby subjected him to the terms of the valid and enforceable agreement. *See, e.g., Calvary SPV I, L.L.C. v. Furtado*, 2005-Ohio-6884, ¶ 18 (10th Dist.) (the issuance of a credit card along with the contractual terms followed by use of the card creates a legally binding agreement, and thus, a plaintiff's evidence in the form of the cardholder agreement and the account statements showing the defendant's use of the card was sufficient to demonstrate a prima facie case of liability for the amount owing on the card).

**{¶14}** Regarding Appellant's unconscionability argument, the trial court pointed to case law observing although a credit card agreement is offered on a "take or leave it" basis, an adhesion contract with one party standing in a more powerful position does not automatically render the contract unconscionable. *See, e.g., Newland v. AEC Southern Ohio College LLC*, 2016-Ohio-675, ¶ 19 (5th Dist.) (if adhesion contracts were procedurally unconscionable per se, no one would be bound by standard credit card agreements, car rental contracts, or cell phone agreements). The trial court emphasized there were no allegations of coercion or fraudulent conduct here. *See e.g., Moran v. Riverfront Diversified, Inc.*, 2011-Ohio-6328, ¶ 23 (1st Dist.) (an adhesion contract is not

---

[1] Below, Appellant alternatively claimed the law in Delaware may result in a higher maximum interest rate than in Ohio but would still be below the rate calculated under his card member agreement, citing Del.Code Ann., Title 6, § 2301 ("lender may charge and collect from a borrower interest at any rate agreed upon in writing not in excess of 5% over the Federal Reserve discount rate including any surcharge thereon").

However, this statutory rate cap does not apply to credit cards. *See Delaware Tech. & Community College v. Emory Hill & Co.*, 116 A.3d 1243, fn. 30 (Del. 2015) (where the Delaware Supreme Court held the statute only applied to personal loans), citing, *e.g., Midland Funding, LLC v. Carrion*, No. CPU5–12–000296 (Del.C.P. Oct. 25, 2013) (credit card interest rate was not limited by usury provision in § 2301 of Title 6, which applies not to revolving credit lines). Rather, on a revolving credit plan with an unpaid outstanding indebtedness, a bank may charge the periodic rate, schedule, or variable formula set forth in the agreement. Del.Code Ann., Title 5, § 943-944. Here, the trial court cited Ohio law in upholding the contractual rate, and the alternative Delaware cap argument is not maintained by Appellant on appeal.

Case No. 24 JE 0015

necessarily unconscionable and unequal bargaining power is not itself a sufficient reason to find an agreement unenforceable absent evidence the weaker party was defrauded or coerced into agreement as a result of the imbalance).

**{¶15}** Disposing of Appellant's usury argument, the trial court said this was an action on an account governed by R.C. 1343.03, making the contractual interest rate applicable rather than the 8% cap in R.C. 1343.01. The court entered judgment for the bank in the amount of $9,832.62, which was the last statement balance. Consistent with the bank's declaration in the complaint, the court did not award prejudgment interest on the last statement balance or postjudgment interest. Appellant filed a timely notice of appeal.

<u>ASSIGNMENTS OF ERROR ONE − THREE</u>

**{¶16}** Appellant's pro se brief sets forth five assignments of error. The first three, which he addresses together, provide:

"The Trial Court erred by awarding Summary Judgment to the Plaintiff-Appellee, as Defendant-Appellant pled triable issues of fact existed."

"The Trial Court erred by declaring that the Contract was not unconscionable."

"The Trial Court erred by declaring that the Contract was valid and enforceable."

**{¶17}** Appellant argues he sufficiently set forth "triable issues of fact" by alleging the card member agreement was "unconscionable (and thus, not valid and enforceable)."[2] After quoting law on procedural and substantive unconscionability, his brief concludes: "The Defendant-Appellant showed in his Answer that JP Morgan Chase has unequal bargaining power and an advantage over the Defendant Appellant."

**{¶18}** Appellant apparently uses the word "answer" to refer to his *response* to the bank's motion for summary judgment. However, a response to a motion is not a pleading. Civ.R. 7(A) strictly defines "pleadings" as including a complaint and the answer to the complaint (along with items not pertinent here such as reply to a counterclaim). As the bank points out, Appellant's *answer* to the complaint merely contained general denials for

---

[2] Appellant merges his argument on unconscionability with his argument that the court erred in declaring the agreement was valid and enforceable. (He does not mention or allude to the other conclusory portions of his validity argument referring to a lack of evidence on consideration or capacity.)

want of knowledge.  His answer failed to set forth any affirmative defenses.  According to rule:

> *In pleading to a preceding pleading, a party shall set forth affirmatively* accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, want of consideration for a negotiable instrument, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, *and any other matter constituting an avoidance or affirmative defense.*

(Emphasis added.)  Civ.R. 8(C).

{¶19}  "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."  Civ.R. 8(D).   Accordingly, affirmative defenses are waived if not raised in the pleadings or in an amendment to the pleadings.  *State ex rel. Parker Bey v. Bur. of Sentence Computation,* 2022-Ohio-236, ¶ 17.  As the Ohio Supreme Court explained, this waiver applies to affirmative defenses listed in Civ.R. 8(C) and any other defense through which a defendant essentially proposes:  even if the plaintiff's claim is true, there is a legal reason to avoid it.  *Id.* at ¶ 17-18 (as opposed to a negating defense challenging an element of the plaintiff's case).

{¶20}  "Unconscionability is an affirmative defense to a breach of contract claim." *Am. Express Centurian Bank v. Banaie*, 2010-Ohio-6503, ¶ 24 (7th Dist.).  Consequently, the defendant must plead unconscionability in the answer to avoid waiving this defense. *Id.*; *Gingrich v. Otter Fork Equestrian Complex LLC*, 2024-Ohio-2775, ¶ 69 (5th Dist.); *Cincinnati v. PE Alms Hill Realty LLC*, 2023-Ohio-2784, ¶ 47-49 (1st Dist.).   In accordance, the party opposing summary judgment may not rely on an affirmative defense of unconscionability that was not raised in the answer to the complaint. *Frenchtown Square Partnership v. Nick Enterprises, Inc.*, 2021-Ohio-663, ¶ 10 (11th Dist.).

{¶21}  As the bank further points out, Appellant failed to respond to the bank's requests for admissions.  This failure prompted the bank's summary judgment motion to emphasize how the questions in admissions about the contract were deemed admitted

under Civ.R 36(A)(1) and (B), including for summary judgment purposes. *Cleveland Trust Co. v. Willis*, 20 Ohio St.3d 66, 67 (1985) (the failure to respond to a request for admission renders the matter conclusively established "even if it goes to the heart of the suit"); *Klesch v. Reid*, 95 Ohio App.3d 664, 674-675 (8th Dist.1994) (a matter deemed admitted based on failure to respond to a request for admission constitutes proper Civ.R. 56(C) summary judgment evidence). Notably, Appellant did not subsequently address his failure after it was emphasized by the bank's summary judgment motion. *See Cleveland Trust* at 67 ("Under compelling circumstances, the court may allow untimely replies to avoid the admissions."). We also note if Appellant properly raised unconscionability in the answer, then the bank would have been on notice to seek disclosures on subjects relevant to this affirmative defense by crafting pertinent questions in its discovery requests. In sum, Appellant waived various affirmative defenses by failing to assert them in his answer to the complaint, including the contractual unconscionability defense raised on appeal.

{¶22} In any event, Appellant failed to support an unconscionability defense with meaningful particularized argument or summary judgment evidence. As the Supreme Court has explained, the party claiming contract unconscionability has the burden of proving the agreement is *both* procedurally and substantively unconscionable, which requires an absence of meaningful choice by one party plus terms unreasonably favoring the other party. *Hayes v. Oakridge Home*, 2009-Ohio-2054, ¶ 20. Where a party claiming unconscionability offers no Civ.R. 56 evidence to support an unconscionability argument, summary judgment is proper. *ACV Realty v. Bayview Loan Servicing*, 2016-Ohio-5467, ¶ 23, 25 (7th Dist.) ("contracts are generally enforceable against the parties, even where one party may have failed to read the contract [or it does not] contain equal rights, responsibilities, and liability exposure with regard to all the parties, and courts will not invalidate contracts simply because of a 'bad deal' [as complained by the weaker party]"); *see also Kaiser v. Goff*, 2022-Ohio-4725, ¶ 44 (1st Dist.) (to survive a summary judgment motion, the party maintaining an unconscionability defense must offer evidence sufficient to raise a genuine issue of material fact on procedural and substantive unconscionability).

{¶23} Summary judgment can be granted when there remain no genuine issues of material fact and reasonable minds can only conclude the moving party is entitled to

judgment as a matter of law. Civ.R. 56(C). The movant has the initial burden to show there is no genuine issue of material fact. *Byrd v. Smith*, 2006-Ohio-3455, ¶ 10, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 294 (1996). As explained by the Supreme Court, the non-moving party then has a reciprocal burden. *Id.* The non-movant's response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing there is a genuine issue for trial and may not rest upon mere allegations or denials in the pleadings. Civ.R. 56(E). Although the court is to consider the evidence in the light most favorable to the non-movant, the material issues of each case depend on the substantive law and only outcome-determinative disputed facts will preclude summary judgment. *Byrd* at ¶ 12. We consider the propriety of granting summary judgment de novo. *Comer v. Risko*, 2005-Ohio-4559, ¶ 8 (where the Ohio Supreme Court reversed the appellate court and reinstated the trial court's grant of summary judgment).

{¶24} As detailed by the Ohio Supreme Court, procedural unconscionability principles are concerned with the bargaining process. *Hayes* at ¶ 23. In evaluating procedural unconscionability, relevant factors include: the weaker party's age, education, intelligence, business acumen, experience, and general ability to understand terms along with the stronger party's knowledge of these characteristics; whether there was coercion or intent to defraud; the identity of the contract drafter; the ability to negotiate changes; the pre-printed nature of a form; the font size of certain terms; alternative sources with whom the weaker party could have contracted; and whether the stronger party believed there was no reasonable probability the weaker party could fully perform or knew the weaker party would not benefit from the contract. *Id.* at ¶ 23-24; *Taylor Bldg. Corp. of Am. v. Benfield*, 2008-Ohio-938, ¶ 43, 45, 50.[3]

{¶25} A contract of adhesion has been described as "a standardized form contract prepared by one party, and offered to the weaker party, usually a consumer, who has no realistic choice as to the contract terms." *Taylor* at ¶ 48. "The stronger party's refusal to negotiate a key term is a common feature of adhesion contracts." *Id.* Nevertheless, a contract of adhesion is not automatically classified as unconscionable. *Id.* at ¶ 49.

---

[3] Both *Hayes* and *Taylor* evaluated arbitration clauses. The Supreme Court expressed more concern for unconscionability where the case involves an arbitration clause inserted into a contract on an adhesion-like basis. *See Taylor* at ¶ 50 (while explaining an arbitration clause is considered a contract within a contract and its terms are considered independent of the underlying contract's terms).

Typically, consumer contracts are not negotiated clause by clause, and standardized or form contracts benefit the consumer by decreasing costs. *Id.* As observed in the case cited by the trial court:

> If all adhesion contracts were procedurally unconscionable, none of us would be bound by car lease/rental agreements, standard credit card agreements, standard cell phone agreements, or airplane tickets (to mention a few). As consumers, on a daily basis we accept and agree to terms included in agreements in which we are not the drafters, we are not on equal footing, and the agreements are on a 'take-it-or-leave-it' basis.

*Newland*, 2016-Ohio-675, at ¶ 19 (5th Dist.). Moreover, the application of a procedural unconscionability defense is highly fact-specific and requires the proper presentation of information on the particular circumstances surrounding the making of the agreement. *Moran*, 2011-Ohio-6328, at ¶ 32 (2d Dist.); *Credit Invests., Inc. v. Obanion*, 2014-Ohio-5799, ¶ 26 (2d Dist.) (factual allegations in a memorandum opposing summary judgment do not qualify as supporting evidence in the record on procedural unconscionability).

**{¶26}** On this subject of procedural unconscionability, Appellant provided no affidavit regarding aspects of himself that would make him susceptible to misunderstanding terms or the bank's knowledge of his weaknesses. The complained of interest rate was not in small print or legalese. There is no indication Appellant lacked an alternative source of credit from other entities. Appellant does not suggest the bank believed there was no reasonable probability he could fully perform the contract. He does not claim he received no benefit from the relationship and the bank was aware of this when issuing credit. And, there was no evidence of coercion or intent to defraud Appellant. *See Hayes*, 2009-Ohio-2054, at ¶ 23-24.

**{¶27}** As the trial court pointed out, the mere fact that a card-issuing bank may be considered to generally possess more power than most individual card members does not raise a genuine issue of material fact on unconscionability. And, Appellant's remaining argument about this bank having an abundance of money to hire lawyers to draft contracts would be an aspect of the bargaining power leading up to the contract. "[I]nequality of bargaining power alone is insufficient to invalidate an otherwise enforceable arbitration contract." *Taylor*, 2008-Ohio-938, at ¶ 44. Moreover, contrary to

a suggestion in Appellant's response to the motion for summary judgment, the bank's financial ability to hire attorneys in the future in order to file enforcement actions after a consumer's breach does not make a contract unconscionable. Appellant's procedural unconscionability argument fails.

{¶28} Where procedural unconscionability is not supported with summary judgment evidence, substantive unconscionability need not be addressed. *See id.* at ¶ 52. We nonetheless point out when substantive unconscionability is at issue, the party must show the contract terms are not commercially reasonable as they unreasonably favor the stronger party. *Hayes* at ¶ 20, 33. Depending on a particular agreement's content, some relevant considerations may include the ability to predict future costs or liability, industry standards, the fairness of the terms, and the charge for the product or service. *Id.*

{¶29} The card member agreement granted Appellant a lengthy introductory rate of 0%. The bank would receive no interest if the balance was paid before the end of the introductory period and other requirements such as minimum payments were satisfied. Thereafter, the bank would receive no interest if the card was paid in full each billing cycle. To offset these instances and the risks involved, the bank charges interest where a balance is carried after the due date. Appellant set forth no summary judgment evidence on industry standards on whatever terms he believes were unconscionable, primarily the interest rate. Appellant did not raise a genuine issue of material fact as to whether a contract term was commercially unreasonable.

{¶30} Regardless, as set forth above, Appellant failed to raise a genuine issue of material fact on procedural unconscionability, and both aspects of unconscionability must be supported. Appellant's arguments are without merit, and these assignments of error are overruled.

## ASSIGNMENT OF ERROR FOUR

{¶31} Under the fourth assignment of error, Appellant contends:

"The Trial Court erred [by] declaring that the Interest Rate is governed by O.R.C. 1343.03 and not O.R.C. 1343.01."

{¶32} As the bank did not seek or receive any interest after the charge-off of the debt, the rate being challenged here is the one periodically applied to Appellant's overdue

credit card balances before the final statement. Instead of the 18.99% variable rate set forth in the card member agreement, Appellant claims the credit card debt should have been governed by the 8% per annum interest rate cap in a usury statute, which states:

> The parties to a bond, bill, promissory note, or other instrument of writing for the forbearance or payment of money at any future time, may stipulate therein for the payment of interest upon the amount thereof at any rate not exceeding eight per cent per annum payable annually, except as authorized in division (B) of this section.

R.C. 1343.01(A). (None of the exceptions in division (B) apply here.) In seeking the application of this statutory cap, Appellant concludes the trial court erred in relying on the following statute to find the interest on his charges was governed by the contract rate:

> In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into . . . the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

R.C. 1343.03(A) (ellipsis omits postjudgment interest language), citing R.C. 5703.47 (federal short-term rate plus three percent).[4] Money paid on usurious interest shall be considered a principal payment to the extent it exceeded the statutory rate. R.C. 1343.04 ("and judgment shall be rendered for no more than the balance found due, after deducting the excess of interest so paid").

{¶33} Appellant relies on the introductory clause in R.C. 1343.03(A), stating the creditor is entitled to the contracted rate when money becomes due and payable on an instrument of writing, verbal contract, or book account "[i]n cases other than those

---

[4] The other statute cited in R.C. 1343.03 provides: "Upon all judgments, decrees, or orders, rendered on any bond, bill, note, or other instrument of writing containing stipulations for the payment of interest in accordance with section 1343.01 of the Revised Code, interest shall be computed until payment is made at the rate specified in such instrument." R.C. 1343.02.

provided for in sections 1343.01 . . ." He asserts his credit card account is such a case otherwise provided for in R.C. 1343.01 based on his characterization of the card member agreement as an "instrument of writing for the forbearance or payment of money at any future time" as the phrase is used in R.C. 1343.01(A).

**{¶34}** However, Appellant's contention that the trial court should have applied the 8% interest cap in R.C. 1343.01(A) to his credit card agreement is without merit. As the trial court pointed out, "An action to collect on a credit-card balance constitutes an action on an account." *Midland Credit Mgt., Inc. v. Naber*, 2024-Ohio-1028, ¶ 13 (1st Dist.), citing *Capital One Bank (USA) N.A. v. Ryan*, 2014-Ohio-3932, ¶ 36 (10th Dist.) (a complaint seeking to recover credit card debt is action on an account, which essentially consolidates several different due and payable claims of the creditor after a series of transactions on which a balance remains); *see also Calvary*, 2005-Ohio-6884, at ¶ 19-20 (10th Dist.) (pursuant to R.C. 1343.03(A), the plaintiff is entitled to prejudgment interest under the credit card agreement explaining the variable rate). The use of the card after issuance binds the user to the provided credit card agreement. *Midland Credit* at ¶ 15. An "account stated" exists where the debtor does not object to the account provided by the creditor in a reasonable time. *Id.* at ¶ 17, citing *Ryan* at ¶ 38 (duty of examination and objection).

**{¶35}** The trial court additionally cited case law holding that although R.C. 1343.03 says it applies in cases other than R.C. 1343.01, a credit card account is not covered by R.C. 1343.01. *Ohio Receivables, L.L.C. v. Dallariva*, 2012-Ohio-3165, ¶ 39 (10th Dist.) (allowing a rate of 2% per month, which was 24% per annum, provided in the credit card agreement for unpaid balances), citing *John Soliday Fin. Group, L.L.C. v. Wetzl*, 2010-Ohio-756, ¶ 12 (7th Dist.) (reversing the trial court's limitation of interest to 8% after default on car loan and observing, "Ohio courts have held that interest rates higher than the statutory rates are permissible when provided for in the contract"). R.C. 1343.01(A) does not include an account in the list of writings, while R.C. 1343.03(A) adds account to the list of writings, speaks of money due and payable, and says a contract accompanying the account can set an interest rate to avoid *the latter statute's* default rate.

**{¶36}** Appellant cites no cases applying R.C. 1343.01(A) to a credit card account (or to any account). His conclusory argument does not explain how the credit card

agreement accompanying his credit card issued with a zero balance and effective after he subsequently made a charge is akin to R.C. 1343.01(A)'s "instrument of writing for the forbearance or payment of *money* at any future time [with a] stipulat[ion] therein for the payment of interest upon *the amount thereof*" where there is no amount of money stated therein. (Emphasis added.) Rather, R.C. 1343.01(A) is applicable where the relation of debtor and creditor is formed by any instrument of writing for forbearance or payment of money at any future time. *Florence v. New York Life Ins. Co.*, 48 Ohio St.2d 59, 62, fn. 2 (1976); *see also Hogg v. Ruffner*, 66 U.S. 115, 118-19 (1861) (usury statute merely codified the common law principle that a contract itself is not usurious if it "is not for the loan of money" or "for forbearance of a debt or sum of money").

**{¶37}** On an account, the purchase transaction creates the debtor-creditor relationship. *Gray Printing Co. v. Blushing Brides, L.L.C.*, 2006-Ohio-1656, ¶ 21 (10th Dist.). In discussing an open book account, the Supreme Court of Ohio has explained it as "a detailed statement that constitutes the principal record of the transactions between the creditor and debtor arising out of a contract or fiduciary relationship. The statement details the debits and credits in connection with the debtor/creditor relationship." *Minster Farmers Coop. Exchange Co. v. Meyer*, 2008-Ohio-1259, ¶ 16, citing *Cusano v. Klein*, 264 F.3d 936, 942, fn. 2 (C.A.9 2001).

**{¶38}** In this context, an account "preferably" starts with a zero balance (or a sum representing "an account stated") with the balance being "a provable sum"; next, there should be dated and labeled items showing charges, debits, or credits; and last, the summarization must show the "running or developing balance or an arrangement which permits the calculation of the balance claimed to be due." *Id.*, quoting *Asset Acceptance Corp. v. Proctor*, 2004-Ohio-623, ¶ 12 (4th Dist.) (a credit card case where the defendant raised affirmative defenses in the answer, responded to discovery requests, and provided an affidavit in response to summary judgment), quoting *Brown v. Columbus Stamping & Mfg. Co.*, 9 Ohio App.2d 123, 126 (10th Dist. 1967).

**{¶39}** Upon so stating, the Supreme Court concluded: "*The accounts at issue meet the definition and requirements of book accounts, and thus R.C. 1343.03(A) applies*. R.C. 1343.03(A) is a specific statute addressing the maximum rate of interest that may be charged on a book account absent a written contract establishing a different interest

rate." (Emphasis added.) *Minster Farmers* at ¶ 17 (where the creditor had been applying a 24% rate after listing the rate on invoices and asked to apply a different statute dealing with the ability to add terms to a contract), ¶ 25 (even in cases where it could be said certain "statutes conflict, the more specific provision controls over the more general provision"), citing R.C. 1.51. Consequently, if an agreement exists along with the account, then R.C. 1343.03(A) would continue to apply, and said statute says to apply the contract rate.

**{¶40}** In coming to its conclusion in *Minster Farmers*, the Supreme Court implicitly found the account existed in "a case other than provided in sections 1343.01 and 1343.02" by explicitly quoting this introductory phrase from R.C. 1343.03(A) and then applying the rate in R.C. 1343.03(A). *Id.* at ¶ 14, 29. The issue of whether an invoice constituted a written contract supporting a higher interest rate than allowed by the calculation in R.C. 1343.03 was not discussed until after the Supreme Court impliedly found R.C. 1343.01(A) inapplicable to the account in *Minster Farmers. Id.; see also Taylor v. First Resolution Invest. Corp.,* 2016-Ohio-3444, at ¶ 77, 84 (where the Supreme Court held a debt buyer can only receive interest under the statutory calculation in R.C. 1343.03(A) *in the absence of a credit card agreement to show the applicability of the interest rate contained in the statements*; thus, if the agreement had been produced, the 24% rate in the statements would have continued to apply).

**{¶41}** Clearly, the existence of a written contract with the applicable interest rate does not change the account character or the genesis of the debtor-creditor relationship. *See Minster Farmers* at ¶ 28 (evaluating "R.C. 1343.03's requirement of a written contract" to avoid the default rate in *that statute* with no regard for R.C. 1343.01), citing R.C. 1343.03(A) (explicitly applying the contract rate to an account and allowing a written contract to change the default rate provided in that statute).

**{¶42}** Additionally, we reiterate how Appellant's failure to respond to the requests for admissions constitutes an admission on the pre-charge-off balance due and owing; he therefore admitted he owed $9,832.62. Civ.R 36(A)(1) and (B); *Cleveland Trust*, 20 Ohio St.3d at 67. We also reiterate a defendant is to plead in the answer any matter constituting an avoidance or affirmative defense under Civ.R. 8(C) to avoid waiver. *State ex rel. Parker Bey,* 2022-Ohio-236, ¶ 17. The rule specifies illegality on the non-

exhaustive list of affirmative defense. Civ.R. 8(C) (also specifying the defense of payment). Accordingly, it has been found that in order to argue a statute renders a portion of the agreement illegal, the defendant must raise the matter as an affirmative defense. *Stickovich v. Cleveland*, 2001-Ohio-4117, *22, 23 (8th Dist.).

**{¶43}** Where the defense alleges the plaintiff's complaint contained a usurious rate of interest as part of the money due, courts have ruled this usury argument is an affirmative defense, which is waived if not raised by the defendant in the answer. *See Russin v. Shephe*rd, 2007-Ohio-3206, ¶ 43 (11th Dist.), citing *Farm Credit Servs. of Mid-America v. Runyan*, No. 98CA28 (2d Dist. May 28, 1999). In addition, we have pointed out a plaintiff moving for summary judgment does not have the burden to disprove affirmative defenses such as recoupment or setoff, even where a defendant's answer raises these subjects. *Huntington Bank v. Perdue*, 2024-Ohio-945, ¶ 18-21 (7th Dist.); *see also Asset Acceptance*, 2004-Ohio-623, at ¶ 15 (4th Dist.) (affirmative defense of payment of credit card debt must be raised in answer).

**{¶44}** Here, the complaint sought the balance contained in the last statement, which resulted from Appellant's use of the card with the interest under the contracted rate (until the debt was charged off). Appellant's answer merely denied the bank's claim for want of knowledge and set forth no affirmative defenses, and Appellant did not seek to amend his answer despite the multiple continuances in the case. Although a general denial does not relieve the bank from making a case on the elements of a contract claim, it does not require the bank to negate unraised defenses.

**{¶45}** Even assuming a trial court may apply a usury law to a pre-charge-off amount alleged to be due, despite being unraised in the answer to the complaint, such practice could overlook the bank's opportunity to present facts that could make exceptions or other statutes applicable. For instance, Appellant's opposition to summary judgment emphasized the bank's Ohio location and suggested the bank was headquartered in Ohio, while noting he was charged variable rates between 18.99% and 23.99%. We note the trial court granted summary judgment to the bank before expiration of the bank's time for replying to Appellant's summary judgment opposition, wherein Appellant raised the 8% usury statute for the first time. The bank's motion had outlined certain federal law, including Regulation Z associated with the Truth in Lending Act.

{¶46} Federal law provides: "A national bank located in a state may charge interest at the maximum rate permitted to any state-chartered or licensed lending institution by the law of that state." 12 C.F.R. 7.4001(b); *see also* 12 U.S.C. 85; *Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735 (1996) (a national bank issuing a credit card can charge interest rate allowed by the state where it is located). We also note to the extent Appellant intends to apply Ohio banking law by making claims about the bank's headquarters, an Ohio statute provides, "A bank may contract for and receive interest or finance charges at any rate or rates agreed upon or consented to by the parties to the loan contract, extension of credit, or revolving credit agreement, but not exceeding an annual percentage rate of *twenty-five per cent*." (Emphasis added.) R.C. 1109.20(A) ("In addition, a bank may charge, collect, and receive, as interest, other fees and charges that are agreed upon by the bank and the borrower, including, but not limited to, . . . charges for late payments . . . [which] shall not be included in the computation of the annual percentage rate or the rates of interest or finance charges for purposes of applying the twenty-five per cent limitation.")[5] "The charging, collection, or receipt of the interest and finance charges, and other fees and charges authorized under this section are deemed not to violate any provision of the Revised Code that prescribes, regulates, or limits any fee, charge, rate of interest, or finance charges." R.C. 1109.20(E). Finally, as to any suggestion by Appellant below that Delaware usury law should be applied for this purpose, we point to our fn. 1 above, which points out said state allows the contract rate.

{¶47} In sum, under various analyses set forth herein, the trial court correctly concluded the credit card account was not covered by R.C. 1343.01(A). *Ohio Receivables*, 2012-Ohio-3165, at ¶ 39 (10th Dist.) (rejecting the card member's argument the interest was limited by R.C. 1343.01 and finding the bank was permitted to charge 24% per annum interest on unpaid balances, as provided in the credit card agreement);

---

[5] This is consistent with provisions across the Ohio Revised Code in other fields setting a 25% maximum annual percentage rate. *See, e.g.,* R.C. 1317.062 (retail installment sales); R.C. 1321.571 (certain mortgage registrants); R.C. 1322.30 (other specified mortgage registrants); R.C. 1321.791 (premium finance company); R.C. 1733.251 (credit unions). In one of the early extensions of these statutory 25% rate caps, the legislature explained a set of amendments was "to extend . . . the authority of banks, credit unions, retail sellers, small loan companies, second mortgage loan companies, and insurance premium finance companies to charge an alternative, maximum annual percentage rate of twenty-five per cent on loans and other credit made or extended by them." 1991 H.B. 415 (amending R.C. 1107.262, which was the predecessor to R.C. 1109.20).

Case No. 24 JE 0015

*Citibank v. Eckmeyer*, 2009-Ohio-2435, ¶ 54-61 (11th Dist.) (rejecting the card member's argument that the credit card company should be limited to 8% statutory interest and upholding summary judgment awarding the bank the contractual interest at a rate of 24.99% per annum). Consequently, the argument specified in Appellant's brief on appeal fails, and this assignment of error is overruled.

ASSIGNMENT OF ERROR FIVE

{¶48} Appellant's final assignment of error claims:

"The Trial Court erred by declaring a presumptive Summary Judgment Motion would be forthcoming by the Plaintiff, after the Trial Court denied/overruled the Plaintiff's Motion for Extension of Time."

{¶49} Appellant complains about the May 23, 2024 judgment wherein the trial court mentioned the bank asked for "an additional sixty (60) days in which to provide an affidavit for purposes *of what is presumed to be a summary judgment motion.*" (Emphasis added.) Appellant briefly contends the court "violate[d] due process by presuming that the Plaintiff would file a Motion for Summary Judgment rather than going to trial." He concludes the court improperly "suggested" the bank file a summary judgment motion while the court was denying the bank's extension motion.

{¶50} Initially, we observe the trial court's May 23, 2024 entry (on the bank's second motion for an extension of the scheduling order) denied the bank's request for an additional sixty days (while pointing to the June 28, 2024 trial date). However, this ruling essentially granted a shorter extension by indicating the scheduled trial would be canceled pending a ruling on any dispositive motion filed before the trial date. (5/23/24 J.E.).

{¶51} Next, we point out the court was not suggesting or prompting the bank to file a summary judgment motion. The original scheduling order of December 19, 2023 set the date for dispositive motions, as is standard in a civil case. A summary judgment motion is a dispositive motion. The bank was seeking an extension of the date for dispositive motions in order to obtain an affidavit. An affidavit is an acceptable item used as summary judgment evidence and used to incorporate other evidence for use in ruling on summary judgment motion. Civ.R. 56(C),(E). We note a trial would involve live testimony to provide a foundation for business records (as noted in the discovery provided

by the bank to Appellant), rather than an affidavit. Hence, there was nothing unusual about a trial court "presum[ing]" a plaintiff's request for an extension of a dispositive motion date in order to obtain an affidavit was related to the drafting of a summary judgment motion.

**{¶52}** Notably, besides mentioning the general principle of due process, Appellant cites no law in support of this assignment of error. The trial court has broad supervisory control over its own docket. *State ex rel. Buck v. McCabe*, 140 Ohio St. 535, 537-538 (1942) (continuance decision is not reversed absent a clear abuse of discretion). Therefore, it is within the trial court's sound discretion to grant an extension of filing deadlines, and said decision will not be disturbed on appeal unless an abuse of discretion is demonstrated. *Marion Prod. Credit Assn. v. Cochran*, 40 Ohio St.3d 265, 271 (1988). When a court's scheduling order allows an act within a specified time, "the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order . . ." Civ.R. 6(B). The movant is not required to show excusable neglect unless the period or extended period passed before the extension was requested. *Id.* In support of the trial court's extension, we point to the timeliness of the bank's filings: the first extension request was filed before the dispositive motion due date; the second extension request was filed before the extended dispositive motion due date, and the summary judgment motion was filed three days before the trial date (the trial date being the final deadline offered in the court's May 23, 2024 entry).

**{¶53}** Despite invoking a due process argument, Appellant is not actually asserting a deprivation of any particular right. He was not denied any continuance or extension of time to file a motion. Nor did he seek an extension of time to conduct further discovery or additional research in response to the bank's summary judgment motion. *See, e.g.*, Civ.R. 56(F) ("Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."). Even more notably, Appellant responded to the motion for summary judgment. And, he did not raise this issue

in his response to the motion for summary judgment. The court's grant of a partial extension to the bank upon a request made before the dispositive motion deadline (and the court's use of the word "presumably" while mentioning what title the dispositive motion will likely carry) does not encompass any discernible due process violation. This assignment of error is overruled.

**{¶54}** For the foregoing reasons, the trial court's judgment is affirmed.

Hanni, J., concurs.

Dickey, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Steubenville Municipal Court of Jefferson County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**